854 So.2d 374 (2003)
Vicky WARE
v.
ALLEN PARISH SCHOOL BOARD.
No. 02-1011.
Court of Appeal of Louisiana, Third Circuit.
May 21, 2003.
Order Granting Rehearing September 24, 2003.
*375 Maria Anna Losavio, Flournoy, Doggett & Losavio, Alexandria, LA, for Plaintiff/Appellant, Vicky Ware.
Samuel Newman Poole Jr., Gold, Weems, Bruser, Sues & Rundell, Alexandria, LA, for Defendant/Appellee, Allen Parish School Board.
Court composed of SYLVIA R. COOKS, JIMMIE C. PETERS, and GLENN B. GREMILLION, Judges.
GREMILLION, Judge.
The plaintiff, Vicky Ware, appeals portions of the judgment by the workers' compensation judge denying her temporary total disability benefits, supplemental earnings benefits, medical treatment, and penalties and attorney's fees for certain acts of the defendant, Allen Parish School *376 Board. For the following reasons, we affirm in part, reverse in part, and render.

FACTS
On November 29, 1999, Ware fell while working as a cafeteria worker at Oakdale Elementary School in Oakdale, Louisiana. She was treated that same day by her family practitioner, Dr. George Mowad, for complaints of pain in her shoulders, lower back, hips, and legs. She was treated with injections and pain medication for her lower back and left thigh on December 3 and 10, 1999, and was referred to physical therapy on January 3, 2000. On January 20 and February 8, 2000, she complained of pain in her left knee and her pelvis; she received steroid injections and was referred for physical therapy.
Ware was referred to Dr. Elemer Raffai, an orthopedic surgeon, on March 29, 2000, and was seen by him a total of eighteen times through January 9, 2002. At her initial visit, she indicated that she was seeing Dr. Raffai for her pelvic, hip, "butt bone," and knee. Over that period of time, Ware consistently complained of pain and stiffness in her lower back, while Dr. Raffai nearly always noted point tenderness at L5-S1, along with stiffness in her back, and a negative straight leg raise and a negative tripod. A March 30, 2000 MRI revealed disc dehydration at L4-5 and L5-S1, accentuated at L5-S1; however, there was no evidence of disc herniation. Over the course of this time, Dr. Raffai treated Ware with injections and physical therapy. On May 10, 2000, Dr. Raffai continued Ware on light duty.
Dr. Raffai's notes first indicate left knee complaints by Ware on June 14, 2000, with further complaints made on November 14, 2000. At that time, she also made her first complaints of pain in her left upper extremity or shoulder. Dr. Raffai initially indicated the possibility of carpel tunnel syndrome, for which he prescribed a tens unit and a nerve conduction study, which was denied by Mor-Tem Risk Management Services, the third party administrator for Allen Parish. He later changed the diagnosis to rotator cuff tendinitis and recommended x-rays and an MRI to rule out a rotator cuff tear. These tests were not approved.
Dr. Gerald Leglue, a physiatrist, evaluated Ware on October 23, 2000, determining that she was suffering from left iliolumbar dysfunction, left piriformis syndrome, and possible left hip bursitis. He recommended acupuncture but, if not approved, then four weeks of physician-directed therapy with emphasis in the left piriformis muscle and the left iliolumbar ligament region. Dr. Raffai did not approve the acupuncture, opining that physical therapy and conservative management would benefit Ware most.
During the course of his treatment, Dr. Raffai referred Ware to Dr. Charles Bramlet, a psychiatrist, for treatment of depression, to a Dr. Lorio, a spine specialist, for an opinion on her chronic lower back pain, to Dr. Troy Vaughn, a neurosurgeon, for a second opinion on her lower back condition, and a Dr. Lazaro, a rheumatologist. Mor-Tem did not approve these referrals.
A functional capacity evaluation (FCE) was scheduled with Alexandria Physical Therapist on December 28, 2000. However, this appointment was later canceled at the request of Andy Storer, the case manager for Mor-Tem, who scheduled an FCE with Dr. Phillip Osborne, a neurosurgeon, on December 22, 2000. This appointment was changed to April 9, 2001, at which time an examination and FCE were performed by Dr. Donald Smith, a neurosurgeon. He noted Ware's complaints of aching across her lower back, and a burning in the middle of her back, that radiated to *377 the coccyx, aching, burning, and pins and needles down her left lower extremity, occasional numbness in her left foot, shooting pains in her left knee, with burning on the outside of her knee, and occasional knots in her left leg. He further noted that Ware was a depressed lady, whose movements were slow but otherwise normal. Her range of movement in her lower back was mildly restricted to anterior flexion and to hyperextension, with complaints of pain when attempting the extremes of these motions. Pain was also produced ipsilaterally at approximately sixty to seventy degrees during the straight leg raise test, bilaterally. Flexion of the thigh on the abdomen and rotation of the hip bilaterally produced equal degrees of low back pain. Despite Ware's complaints of pain, Dr. Smith noted that she was able to sit completely upright on the examination table with her legs extended to ninety degrees, with no visible discomfort. He further indicated that her MRI was normal for someone of her age and general status.
With regard to the FCE, Dr. Smith opined that the test was invalid due to her refusal to perform any of the lifting procedures, including the isometric onetime strength testing and the lumbar protocols of repetitive testing. Thus, he felt that the test was not useful in measuring her physical capabilities. After the FCE was performed, Dr. Raffai deferred to Dr. Smith's opinion and discharged Ware from his care. She returned to him on May 16, 2001, with continued complaints of pain in her lower back, right hip, and leg. Noting that there was nothing he could do for her, he suggested a referral to Dr. Lazaro, a rheumatologist. On July 3, 2001, he recommended injections and physical therapy. Neither the referral nor the physical therapy was approved.
On July 24, 2001, Dr. Raffai met with Anna Esterak, the nurse case manager assigned to Ware's file by Storer, and Ware's attorney. He opined that Ware was at maximum medical improvement, but that she would benefit from pain management treatment for her chronic lower back pain. He suggested discharging her from his care and transferring her to a pain management specialist. He noted that this was done at the suggestion of Ware's attorney. Ware returned to Dr. Raffai three more times, but he stated that there was nothing more he could do for her. On January 9, 2002, Dr. Raffai noted that Ware would suffer from chronic lower back pain for an undetermined time. He repeated his request that she see a pain management specialist and prescribed her a back brace.
On November 15, 2000, Ware filed a disputed claim for compensation seeking workers' compensation benefits, penalties, and attorney's fees due to the arbitrary actions of the School Board in failing to provide compensation benefits and in authorizing medical treatment. After Dr. Raffai found that she had reached medical maximum improvement, the School Board terminated her temporary total disability benefits on May 24, 2001. Following a trial on the merits on February 20, 2002, the workers' compensation judge took the matter under advisement. On April 5, 2002, he issued lengthy oral reasons for judgment finding in favor of the School Board on all issues except with regard to Ware's right to be examined by a neurosurgeon of her own choosing and its failure to timely pay mileage submitted to it on July 10, 2001. On these issues, the workers' compensation judge held that the School Board acted arbitrarily and capriciously and awarded Ware $2,000 in penalties on each issue and $2,000 and $2,500 in attorney's fees respectively. This appeal by Ware followed.

*378 ISSUES
On appeal, Ware has presented five assignments of error for review. She argues that the workers' compensation judge erred in allowing the School Board to choose the FCE facility and in allowing Dr. Smith's deposition and medical records into evidence. She also claims that the workers' compensation judge erred in finding that she was not entitled to either supplemental earnings benefits or vocational rehabilitation. Next, Ware argues that the workers' compensation judge erred in finding that she was not entitled to treatment for her back injury, including a back brace and pain management, or that she failed to prove that she suffered a work-related injury to her left upper extremity. She also claims that the workers' compensation judge erred in failing to award her penalties and attorney's fees for the School Board's late payment of medical expenses. Finally, Ware seeks additional attorney's fees for work performed on appeal.

STANDARD OF REVIEW
In order to receive workers' compensation benefits, an injured worker must prove by a preponderance of the evidence that her disability was caused by a work-related accident. Sam v. Asplundh Tree Expert Co., 02-259 (La.App. 3 Cir. 10/2/02), 827 So.2d 631. We further stated:
The injured employee's testimony alone may be enough to meet the burden of proof as long as 1) no other evidence contradicts the employee's version of the accident, and 2) the testimony is corroborated by circumstances following the alleged incident. Bruno v. Harbert Int'l, Inc., 593 So.2d 357 (La.1992). If the employee's testimony contains inconsistencies and discrepancies, then the injured employee's testimony alone will not be enough to prove his injury occurred on the job. Harris v. General Motors, 577 So.2d 1160 (La.App. 2 Cir. 1991).
An injured worker's disability is presumed to have resulted from an accident, if before the accident he was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing either that there is sufficient medical evidence to show there to be a causal connection between the accident and disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection. Walton v. Normandy Village Homes Assoc., Inc., 475 So.2d 320 (La.1985).
Id. at 633-34.
With regard to the need for medical treatment, La.R.S. 23:1203(A) provides that the employer shall provide all necessary treatment, including "medical, surgical, hospital services, medicines, or any nonmedical treatment recognized by the laws of this state as legal." The injured employee establishes a claim for medical benefits by proving by a preponderance of the evidence, and to a reasonable certainty, the need for such treatment as a result of the work-related accident. Yoo Hoo of Louisiana v. Vicknair, 01-771 (La.App. 3 Cir. 12/12/01), 801 So.2d 637. A finding by the workers' compensation judge pertaining to the need for treatment is factual in nature and will not be reversed on appeal in the absence of manifest error or unless it is clearly wrong. Id.
If the employee fails to prove that she is entitled to temporary total disability benefits, then she still may receive supplemental earnings benefits (SEBs) if her injury renders her unable to earn at *379 least ninety percent of her pre-injury wages. La.R.S. 23:1221(3)(a). She carries the burden of proof, which is by a preponderance of the evidence. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733. "Th[is] analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that worker's compensation law is to be liberally construed in favor of coverage." Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989).
If the employee succeeds in carrying her burden of proof, the burden shifts to the employer to prove that the employee is physically able to perform a certain job and that the job was offered to the employee, or that the job was available to her in her or the employer's geographic region. La.R.S. 23:1221(3)(c)(i); Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551. If the employer prevails in this instance, it will either defeat the employee's claims for SEBs or establish her earning capacity. Since these findings are factual in nature, they are reviewed pursuant to the manifest error standard of review. Id.

FUNCTIONAL CAPACITY EVALUATION
In her first assignment of error, Ware argues that the workers' compensation judge erred by allowing the School Board to effectively choose the FCE facility when he admitted Dr. Smith's deposition and medical records into evidence. After reviewing the evidence, we agree that the workers' compensation judge erred in admitting this evidence into the record.
On August 24, 2000, Dr. Raffai requested that Ware undergo work hardening and an FCE to obtain an impairment rating. In response, Esterak notified Ware's attorney by letter, dated November 30, 2000, that an FCE had been scheduled, per Dr. Raffai's order, with Alexandria Physical Therapy on December 28, 2000. On December 7, 2000, after receiving a request for an EMG and nerve conduction study of Ware's upper left extremity, Esterak explained that Storer decided to obtain a neurosurgical evaluation from Dr. Phillip Osborne in Shreveport, as well as an FCE. Accordingly, she testified that she canceled the appointment with Alexandria Physical Therapy and scheduled the FCE with Dr. Osborne. Esterak notified Ware that the Alexandria Physical Therapy FCE had been canceled, per Storer's request, and, in its place, the FCE with Dr. Osborne, was scheduled for December 22, 2000. On December 15, 2000, Ware's attorney challenged this stating that Alexandria Physical Therapy was her choice of an FCE facility unless good cause was shown for the change to Dr. Osborne. Storer testified that he never justified his reason for changing this appointment. Esterak admitted that she never notified Ware or her attorney that they were sending her for a neurosurgical evaluation. She stated that she assumed that Ware's attorney would know that Dr. Osborne always conducted such an evaluation before conducting an FCE.
On March 7, 2001, Dr. Raffai recommended that Ware see Dr. Troy Vaughn, a neurosurgeon, for a second opinion of her lower back pain. A demand letter was sent by Ware's attorney on March 30, 2001, requesting authorization for the referral. On April 9, 2001, Ware attended the FCE in Shreveport out of fear that her compensation benefits would be terminated. This examination was conducted by Dr. Smith rather than Dr. Osborne. On May 9, 2001, Ware sought further authorization to see Dr. John Jackson, a neurosurgeon in New Orleans, since Dr. Vaughn would not treat her because she *380 was a former patient of his partner. Storer testified that he never approved Ware's request to see either neurosurgeons.
At the trial on the merits, Ware objected to the introduction of Dr. Smith's deposition and medical records concerning the FCE. While noting Louisiana Clinic v. Patin's Tire Service, 98-1973 (La.App. 3 Cir. 5/5/99), 731 So.2d 525, which gives the choice of a diagnostic facility to the employee, rather than the employer, the workers' compensation judge, nevertheless, overruled her objection, stating, "We'll note your objection for the record but an FCE is not a medical examination per se to determine the condition of the claimant, nor the need for medical treatment. It's to determine their ability to function." In his oral reasons for judgment, the workers' compensation judge continued his ruling, stating:
The employer had the right to have the lady seen by a neurosurgeon or a physician of their choice. Doctor Raffai had already referred her to a neurosurgeon in March of 2001. I see no reason to not consider the testimony of Doctor Smith simply because it's the contention of the claimant that she wasn't referred there for a neurosurgical examination but she was simply referred to that facility for a FCE.
Although the employer is given the right to have the employee examined by a physician or specialist of its choice as often as reasonably necessary, it is required to give prior written notice of the examination to the employee. La.R.S. 23:1121(A); La. R.S. 23:1124. In this instance, although Ware was given written notice of the FCE, we find that this notice did not properly inform her of the true intent of the School Board, which was to have Ware examined by a neurosurgeon. Moreover, although Ware also had the right to be examined by a neurosurgeon of her choice, Storer denied her request for such authorization, even after it had already scheduled its own examination, albeit, under the guise of obtaining an FCE.
Furthermore, although the workers' compensation judge stated that the FCE would not to be used to determine Ware's condition, he used the information contained therein for that exact purpose; ultimately, terminating her compensation benefits. Accordingly, although the workers' compensation judge is granted great discretion in the admission of evidence into the record, we find that he erred in introducing Dr. Smith's deposition and his medical records comprising the FCE into the record. Nor do we find that allowing Ware to be examined by a neurosurgeon of her choice is sufficient to rectify the wrong brought about by School Board's arbitrary and capricious actions, as Ware has been without weekly benefits since May 24, 2001.
Accordingly, we reverse the workers' compensation judge's ruling overruling Ware's objection to the introduction of this evidence. We award Ware attorney's fees of $5,000, as a result of the School Board's failure to grant her request to be examined by a neurosurgeon of her choice. La. R.S. 23:1121(C). We further order Ware is entitled to an FCE at the facility of her choosing, as well as an examination by a neurosurgeon of her choice, if she has not already undergone one.

COMPENSATION BENEFITS
In her second assignment of error, Ware argues that the workers' compensation judge erred in finding that she was not entitled to supplemental earnings benefits and vocational rehabilitation. We agree.
On April 19, 2001, Dr. Raffai stated that Ware had reached maximum medical *381 improvement (MMI), deferring to Dr. Smith's FCE evaluation. Ware's temporary total disability benefits were terminated on May 24, 2001. On July 3, 2001, Ware returned to Dr. Raffai complaining of pain in her lower back after he had released her from his care on April 25, 2001. On that date, he restricted her to light duty work with no lifting, bending, stooping, or squatting. If sedentary work was not available, then he restricted her from working.
Storer testified that he terminated Ware's weekly compensation benefits on May 24, 2001, after Dr. Raffai deferred to Dr. Smith's findings releasing her to return to her prior employment. He admitted that he never informed her that she could return to her position with the School Board or that the position was still available. However, he knew that her position had been filled on May 5, 2001. Storer testified that he was aware of the restrictions placed on Ware by Dr. Raffai on July 3, 2001, but he stated that he did not reinstate her TTD benefits or start SEBs since Dr. Raffai had previously deferred to Dr. Smith. Nor did he offer her any positions outside of her prior employment with the School Board. He further acknowledged that Esterak recommended referring Ware to vocational rehabilitation, but that he ignored this recommendation.
Esterak testified that she contacted the School Board on May 11 and 17, 2001, and on July 25, 2001, to inquire if it had any light duty job available for Ware. She determined that the School Board did not have any light duty positions, nor was Ware's former position available. Other than this, Esterak testified that she did nothing to determine if there were any positions available to Ware within her physical restrictions. Esterak stated that she placed Ware's file on hold on July 30, 2001, at the instruction of Storer. In her final report, she recommended that Ware be referred to vocational rehabilitation.
Ware testified that the School Board has never offered her a position within the restrictions placed on her by Dr. Raffai, nor has it offered her vocational rehabilitation in an effort to help her find a position. She stated that she has not been employed since her work-related accident, but that she has sought employment on her own, with no success. Ware testified that she is a high school graduate, and has been employed in the past at a finance company, nursing home, hospital, and as a cashier at a grocery store. She stated that she has also hauled pulpwood. She testified that she inquired about positions at a Washington Mutual finance office, two different Dollar Generals, a flea market, and a Pizza Hut; at some of these places more than once. Ware explained that she applied for positions she thought she could physically perform and that she informed the businesses about the physical limitations placed on her by Dr. Raffai. She further testified that she asked family members if they were aware of any positions for which she could apply. Moreover, her monthly report of earnings with the School Board reveals a zero earning capacity from June 2001 through January 2002.
After considering the evidence, we find that Ware reached MMI on April 19, 2001, thus, the workers' compensation judge properly held that she was no longer entitled to TTD as of May 24, 2001. However, he erred in failing to find that she was not entitled to SEBs, since we find that she has proven by a preponderance of the evidence that she has been unable to earn ninety percent of her pre-injury wages since she reached MMI. Additionally, the School Board has failed to present any evidence regarding Ware's earning capacity; thus, we award her SEBs based on *382 zero monthly earnings. Lanthier v. Family Dollar Store, 01-437 (La.App. 3 Cir. 4/3/02), 813 So.2d 1212. In accordance with La.R.S. 23:1201.2, we further find that the School Board acted arbitrarily and capriciously in failing to pay Ware SEBs and in terminating her compensation benefits since its decision to terminate was based on Dr. Smith's FCE, as per our discussion above. Accordingly, we award her $5,000 in attorney's fees.
We further find that the School Board has failed to offer Ware any type of vocational rehabilitation services in an effort to return her to employment. La.R.S. 23:1226. Accordingly, we order the School Board to offer her such services so that she may attempt a return to some form of employment.

FURTHER TREATMENT
In her third assignment of error, Ware argues that the workers' compensation judge erred in finding that she was not entitled to further medical treatment for her lower back, as recommended by Dr. Raffai, including a back brace and pain management. After reviewing the record, we agree.
At a meeting with Ware's attorney and Esterak on July 24, 2001, Dr. Raffai stated that he felt that Ware would benefit from pain management treatment for her chronic lower back pain. He further stated that he wished to discharge her from his care and transfer her to a pain management specialist to follow up on her chronic pain issues. On July 26, 2001, Ware made a written request for pain management treatment with Dr. Miguel Garcia. On August 1, 2001, Dr. Raffai again stated that he was referring her to a pain management specialist and that there was nothing more that he could do for her. Ware made a second demand for pain management treatment on September 13, 2001. On December 12, 2001, Dr. Raffai stated that he would try to get her into chronic pain management. On January 9, 2002, he stated, "I believe she will have chronic lower back pain for an undetermined period. I recommend referring her to pain management at this time as there is not a whole lot more that I can do for her." He further prescribed a back brace for her as a result of her chronic low back pain. The School Board never authorized her request for pain management treatment or the back brace. This was confirmed by Storer's testimony.
Esterak testified that Ware's attorney was the first to suggest pain management at the vocational rehabilitation conference with Dr. Raffai on July 24, 2001. She further stated that she reminded Dr. Raffai that Ware had been sent to Dr. Leglue, a physiatrist, at her counsel's request, on October 17, 2000. However, this examination was for evaluation purposes only, as noted by Dr. Leglue. In his report, he stated that he would see Ware on an asneeded basis in the future. Esterak testified that pain management sometimes falls within the scope of expertise of a physiatrist.
After reviewing the evidence, we find that Ware is entitled to continuing treatment for her chronic lower back pain, including pain management treatment and a back brace, as prescribed by Dr. Raffai. Although Ware was examined by Dr. Leglue, he stated in his report that he was seeing her for evaluation purposes only. Moreover, this evaluation occurred approximately one year prior to Dr. Raffai's referral of Ware for pain management treatment. Dr. Raffai repeatedly states that there is nothing more that he can do for her, and that she will suffer from chronic low back pain for an indefinite period of time. Further, we find that the School Board did nothing to ascertain the condition *383 of Ware, other than to obtain the neurosurgical evaluation by Dr. Smith, under the guise of obtaining an FCE. Even Esterak recommended obtaining a second opinion with regards to Ware's orthopedic condition. Instead of following the advice of its own case manager, it did nothing, just as it did with her recommendation for vocational rehabilitation. Moreover, there is no evidence that Ware suffered from lower back problems prior to her work-related accident, thus, we find error in the workers' compensation judge's finding that Dr. Raffai provided no reason by she would require the brace. The reason is clearly due to her chronic low back pain caused by her work-related accident Accordingly, we find that Ware is entitled to pain management treatment and to the back brace prescribed by Dr. Raffai. The judgment of the workers' compensation judge denying these is reversed.

SHOULDER INJURY
In her fourth assignment of error, Ware argues that the workers' compensation judge erred in finding that she did not suffer an injury to her left upper extremity and shoulder as a result of her work-related accident. We disagree.
On November 29, 1999, Ware complained of pain in her shoulders, along with pain in her lower back, hips, and legs, as well as a headache. Dr. Mowad does not mention any shoulder complaints by her during his seven other examinations. She underwent physical therapy at the Oakdale Community Hospital Physical Therapy Department commencing on December 20, 1999. On that date, she complained of left upper back and shoulder pain. The physical therapist noted moderate tenderness and increased tone in her left upper traps, rhomboid, and thoracic paraspinal muscles.
Ware was first seen by Dr. Raffai on March 29, 2000. In her patient history, she makes no mention of shoulder pain, stating that she is seeing him because of her "pelvic, hip, butt bone, knee." Dr. Raffai first notes complaints of left upper extremity pain by Ware on November 11, 2000. His notes state, "She has been complaining of numbness on and off in the left upper extremity since the injury, shooting into the first and second finger." At this point, Dr. Raffai recommended a nerve conduction study of her left upper extremity to rule out carpal tunnel syndrome. Ware next complains of shoulder pain on January 24, 2001. Dr. Raffai's notes again state, "She has pain in the left shoulder on ROM and sleeping on it, on and off since the accident." At this point, he recommended an x-ray and MRI of the left shoulder to rule out a rotator cuff tear. Her next complaint of shoulder pain occurred on December 12, 2001. Dr. Raffai notes that she is "still having pain in the left shoulder," and that he gave her a pain injection.
Although Ware initially complained of shoulder pain to Dr. Mowad and during physical therapy on December 20, 1999, there are no further complaints until November 11, 2000, approximately one year after her accident and eleven months after her initial complaints. Dr. Raffai's notes are silent on whether her complaints are causally connected to her work-related accident. Considering the length of time between complaints, we cannot say that the workers' compensation judge erred in finding that she failed to prove a causal connection between her work accident of November 29, 1999, and her shoulder complaints of November 2000. Accordingly, the workers' compensation judge's finding with regard to Ware's left shoulder complaints is affirmed.

PENALTIES AND ATTORNEY'S FEES
In her final assignment of error, Ware argues that the workers' compensation *384 judge erred in failing to award her penalties and attorney's fees for its late payment of medical expenses. We agree.
In his oral reasons, the workers' compensation judge noted that one medical bill was received by Mor-Tem on July 13, 2000, but was not paid until September 20, 2000, eight days late. Another medical bill was received by Mor-Tem on January 12, 2001, and was paid by it on March 14, 2001, two days late. In denying Ware's request for penalties and attorney's fees, the workers' compensation judge stated that, in each instance, she was neither denied treatment nor dunned for payment by the medical provider. The workers' compensation judge further referenced a citation from this circuit supporting this principal, but could not recall the exact citation.
In Mitchell v. Dixie Roofing & Sheet Metal Co., 95-288 (La.App. 3 Cir. 10/4/95), 663 So.2d 222, we reversed an award of attorney's fees to the injured employee based on the employer's failure to timely pay medical expenses. In that case, we stated that only the medical provider was aggrieved by the late payment, and that the employee was not required to collect the money, nor had he been harassed by the health care provider as a result of the employer's actions. We further stated that the award of attorney's fees in that instance did "not help the injured worker, makes no contribution to the purpose of the worker's compensation law or the improvement of its administration, and does not serve the ends of justice." Id. at 226.
However, in a later supreme court case, Daugherty v. Domino's Pizza, 95-1394, p. 14 (La.5/21/96), 674 So.2d 947, 956, the court stated:
Where the fact of late payment is uncontradicted and an employer fails to show that the late payment resulted from conditions over which the employer had no control or that the employee's right to have the bill paid by the employer is controverted, La.R.S. 23:1201 and 1201.2 mandate an award of penalties and attorney's fees. See, e.g. LaHaye v. Westmoreland Casualty Co., 509 So.2d 748 (La.App. 3rd Cir.1987).
In this instance, it is uncontradicted that the School Board paid the two medical bills more than sixty days after receiving them. Nor is there any evidence that it controverted them. Storer explained that payment was probably late because Mor-Tem sent the bills to an outside auditor for recommendation on whether they should be paid. If there is confusion concerning a code used in a bill, he stated that the bill is sent back to Mor-Tem, who in turn sends it back to the health care provider for further information. Once a bill is returned to Mor-Tem, he stated that it is returned to the auditor for further determination on payment status. Storer stated that the turnaround time from the auditor is usually ten to fifteen days. Despite this explanation, Storer did not present any evidence that this is what happened in this instance.
Considering the evidence, we find Storer's testimony unsatisfactory in proving that the School Board's late payment resulted from conditions beyond its control. Accordingly, the judgment of the workers' compensation judge denying Ware's claim for penalties and attorney's fees is reversed. We award her $2,000 in penalties and $2,000 in attorney's fees for each late payment.

ATTORNEY'S FEES FOR WORK ON APPEAL
On appeal, Ware asks that we increase her award of attorney's fees as a result of the work performed on appeal. Considering our findings, we award her an additional *385 $5,000 for work performed by her counsel on appeal.

CONCLUSION
For the foregoing reasons, the judgment of the workers' compensation judge is affirmed with regard to Ware's claim of a left upper extremity injury. The remainder of the judgment appealed from is now reversed and it is now ordered, adjudged, and decreed that there be judgment in favor of Ware awarding her supplemental earnings benefits from May 24, 2001, based on zero monthly earnings, and $5,000 in attorney's fees based on the School Board's termination of her compensation benefits. We award her an additional $5,000 in attorney's fees as a result of the School Board's failure to grant her request to be examined by a neurosurgeon of her choice and a total of $4,000 in penalties and $4,000 in attorney's fees for the School Board's late payment of medical expenses associated with her work-related accident. We further order the School Board to offer her vocational rehabilitation and further treatment for her chronic lower back pain including pain management and a back brace, and order that Ware be allowed to undergo a functional capacity evaluation at a facility of her choosing and an examination by a neurosurgeon of her choice, if she has not already done so. Finally, Ware is awarded an additional $5,000 in attorney's fees for work performed on appeal. The costs of this appeal is assessed to the defendant-appellee, Allen Parish School Board.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
GREMILLION, Judge.
We grant rehearing in this matter for the purpose of clarifying and correcting the errors and oversights in our opinion of May 21, 2003.
In that opinion, we awarded attorney's fees of $5,000, as a result of the School Board's failure to grant Ware's request to be examined by a neurosurgeon of her choice, relying on La.R.S. 23:1121(C). It was our intention to increase the attorney fee award from $2,000 to $5,000, rather than increase the award by $5,000.
Also, in our opinion, we awarded Plaintiff penalties of $2,000 and attorney's fees of $2,000 for Defendant's late payment of a medical bill received by it on July 13, 2000. We note that bill was paid eight days late. Further, we awarded penalties of $2,000 and attorney's fees of $2,000 for the late payment of medical bill received by Defendant on January 12, 2001. That bill was paid two days late. La.R.S. 23:1201 provides that penalties for late payments of medical benefits shall be $50 per calendar day, not to exceed a maximum of $2,000 in the aggregate of any claim. In that regard, we reduce the penalty on the July 13th bill to $400 and on the January 12th bill to $100.

CONCLUSION
For the foregoing reasons, we amend our judgment in the following manner:
(1) We award her a total of $5,000 in attorney's fees as a result of the school board's failure to grant her request to be examined by the neurosurgeon of her choice, and
(2) Reduce the total of penalties for the school board's late payment of medical expenses associated with a work-related accident from $4,000 to $500.
REHEARING GRANTED.