DREW, J.
11 Claimant, Mary Rison; her employer, LifeCare Hospitals of Shreveport (“Life-Care”); and LifeCare’s insurer, CNA Insurance Companies (“CNA”), have appealed from a judgment of the Office of Workers’ Compensation (“OWC”), District 1W, Carey Holliday presiding, concerning the functional capacity examination (“FCE”) of Ms. Rison. For the following reasons, we affirm the judgement of the OWC. in all respects.
Mary Rison was working as a nurse assistant at LifeCare Hospital in Shreveport on October 8, 2013. When she attempted to lift a patient from the floor, she felt a “pop” in her back and felt immediate pain.
She reported the incident to her employer and started getting medical care. On October 10, 2013, she went to Willis-Knighton Work Kare. The doctor there found no neurological problems and treated her conservatively with pain medication, which did not relieve her pain. She had an MRI in January 2014 that revealed some disk problems. Injections in May and July 2014 gave her short-term pain relief..
In January 2015, a doctor diagnosed her with spondylolisthesis, the forward displacement of a vertebra, and recommended spinal fusion surgery. She had an independent medical examination[1] on April 6, 2015, with Dr. William Overdyke. Dr. Overdyke also diagnosed her with spondylolisthesis but recommended against surgery; he suggested that she continue conservative care and undertake an at-home exercise program. Dr. Over-dyke also opined:
I have been provided with a job description. I do not believe she can return to the previous level of employment as a nurse | ^assistant. She is not going to be able to lift and move patients safely, or perform other duties that require her to bend over a bed or a patient.
It is my opinion and recommendation that Mary Rison undergo an FCE to determine her future employability and level of activity.
On April 9, 2015, the claimant received notice that her employer had scheduled her to undergo an FCE on May 19, 2015, with a physical therapist, Corey P. Arce *659 ment. The claimant refused to attend the FCE performed by this physical therapist. Instead, she filed an OWC Form 1008, a disputed claim for compensation, on April 30, 2015. She sought medical treatment with a pain management specialist, a determination of her disability status, and penalties and attorney fees for the employer’s refusal to authorize treatment with her choice of medical provider.
On May 4, 2015, the claimant also filed a motion for protective order and an exception of prematurity. The claimant argued that the FCE is now listed in the Medical Treatment Guidelines, so it now must be classified as “medical treatment” within the ambit of the Guidelines. The claimant argued that she had no doctor/patient relationship with the physical therapist selected by the employer, so she did not have to undergo this procedure with him. Further, she argued that the FCE with Mr. Arcement would be premature because the employer had not filed a Form 1010 (a request for authorization for medical treatment) to request the procedure.
In support of her argument, Ms. Rison supplied the OWC with a copy of an OWC Form 1010 submitted to CNA on April 13, 2015, by her choice of FCE provider, Functional Capacity Experts, LLC, and Dr. Steve Allison. fiWhen CNA did not respond to Dr. Allison’s request, the lack of a response was treated as a denial,[2] and Ms. Rison’s request was sent by OWC Form 1009 to the OWC medical director for review.
After reviewing the matter, the medical director approved the claimant’s request on May 1, 2015. The director’s response states, in part:
The requested services have been reviewed for medical necessity and appropriateness according to the Louisiana
Workers’ Compensation Treatment Guidelines (RS 23:1203.1 J>, and the Louisiana Administrative Code (LAC 40:1:2715). The following decision has been made:
NOTE: This review determined whether or not the recommended treatment / services are in compliance with the Medical Treatmeiit Schedule. It does not serve as authorization for the treatment / services, nor does it guarantee payment. Actual authorization for any treatment / procedures must be obtained from the Carrier / Self-Insured employer.
Decision: APPROVED.
• The Louisiana Medical Treatment Guidelines state an FCE “Frequency can be used initially to determine baseline status. Additional evaluations can be performed to monitor and assess progress and aid in determining the endpoint for treatment.”
• .Records and / or correspondence reviewed note an issue of Choice of Provider / Specialty. The Form 1009 J MGD process does not decide on Choice of Provider / Specialty.
* * *

The MTG notes the following specific to this request:

* * *
• Frequency can be. used initially to determine baseline status. Additional evaluations can be performed to monitor and. assess progress and aid in determining the endpoint for treatment.
Emphasis in original.
14After the medical director approved the claimant’s request for an FCE, the *660 employer and insurer filed their own Form 10.08 on May 6, 2015, to appeal from the decision of the medical director
The employer and insurer argued that they had already approved an FCE with the provider of their choice, so the claimant was not entitled to a second FCE with a provider of her choice. The two disputed claims were consolidated in the OWC.
The employer argued that the issue was governed by La. R.S. 23:1121(A) and has already been decided in Clavier v. Coburn Supply Co., 2014-2503 (La. 3/6/15), 161 So.3d 15. That supreme court decision is a writ denial, without reasons, with three justices dissenting, from a judgment of the Third Circuit Court of Appeal. The court of appeal’s judgment is unpublished, but the employer and .insurer assert that the ruling was also a writ denial from a decision, of the OWC that denied an employee his choice of provider for the FCE. According to LifeCare, the Third Circuit based its decision on its previous holding in Gautreaux v. K.A.S. Const., LLC, 2005-1192 (La. App. 3d Cir. 2/22/06), 923 So.2d 850, where the court of appeal, in a published writ denial, decided not to interfere with an order of the OWC directing a claimant to undergo an FCE performed by the employer’s choice of provider, a physical therapist.
The claimant argued that the FCE was medical treatment because the FCE is now included as a procedure authorized by the Medical Treatment Guidelines. She also argued that the:OWC cannot force her to undergo medical treatment, the FCE, with the employer’s choice of provider because Utile Louisiana Consent to Medical Treatment Act, La. R.S. 40:1299.56, gives her the absolute right to choose the persons, who give her treatment. The claim-ant also argued that the methodology employed by the employer’s chosen physical therapist could not satisfy the standards for evidence required by Daubert v. Merrell Dow Pharms., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and State v. Foret, 628 So.2d 1116, 1121 (La.1993).
The WCJ heard arguments on June 18, 2015. The claimant again argued that the employer could not make her attend 'an FCE with the employer’s choice of provider because FCEs are now included in the Medical Treatment Guidelines) making the FCE “medical treatment” that the patient must consent to have. The employer argued that the Gautreaux case had essentially settled the issue in Louisiana and required the claimant to undergo the FCE with the employer’s choice of provider. The employér also argued that the FCE was not medical treatment and .that La. R.S. 23:1121(A), to the extent that it conflicted with the Guidelines, should control the dispute rather than the Guidelines.
The WCJ concluded that the decision of the medical director to approve the claimant’s doctor’s Form 1010 request for an FCE was not contrary to the Guidelines, so the WCJ affirmed the director’s decision. However, the WCJ also ordered the claimant to undergo an FCE performed by the employer’s choice of provider, the physical therapist. The WCJ also decided that the employer had to pay for both exams. The WCJ denied the claimant’s Daubert challenge-to the physical therapist’s methodology. A | ¿judgment was signed in accordance with these reasons, and both sides have appealed.
DISCUSSION

Bison’s Appeal

On appeal, the claimant argues:
• The WCJ erred in upholding the. Medical Director’s decision that the FCE was care, treatment or service contemplated by the MTG but then also finding that LifeCare/CNA was *661 entitled to an FCE as an employer-directed examination under La.. R.S. 23:1121(A).
• The WCJ erred by failirig to grant Ms. Rison’s request for a protective order. The employer/insurer is not entitled to any exam with a physical therapist. Even if the'employer/insurer was entitled to ari “exam” with a physical therapist, an FCE is not a physical therapy examination.
• The WCJ erred by ordering Ms. Ri-son to attend an FCE that utilizes a system that does not meet the minimum “gatekeeping” standard set forth in Daubert/Foret.

LifeCare’s Appeal

On appeal, LifeCare argues:
• The WCJ erred in denying Life-Care’s appeal of the Medical Director’s finding that the Functional Capacity Evaluation requested by the claimant/appellee was made in accordance with the Louisiana Medical Treatment Guidelines, thus allowing for multiple Functional Capacity Evaluations, in violation of La, R.S. 23:1121.
. Because the parties’ arguments are intertwined and concern how the various statutes overlap, we address them together.
Factual findings, in workers’ com; pensation cases are subject to-the manifest error or clearly wrong standard of appellate review. Gilliam v. Brooks Heating & Air Conditioning, 49,161 (La. App. 2d Cir. 7/16/14), 146 So.3d 734. However, questions of law are reviewed de novo. Humble v. Pafford EMS, 47,903 (La. App. 2d Cir. 5/15/13), 116 So.3d 878, 882, writ denied, 2013-1368 (La. 9/20/13), 123 So.3d 177. Most of the issues in this appeal are questions of law.
A workers’ compensation claimant may recover medical treatment that is reasonably necessary for the treatment of a medical condition caused by a work injury. La. R.S. 23:1203(A); Church Mut. Ins. Co. v. Dardar, 13-2351 (La. 5/7/14), 145 So.3d 271; Gilliam, supra at 740.
La. R.S. 23:1203.1 provides, in part:
B. The director shall, through the office of workers’ compensation administration, promulgate rules in accordance with the Administrative Procedure Act, R.S. 49:950 et seq., to establish a medical treatment schedule.
C. The schedule shall be developed by the conscientious, explicit, and judicious use of current best evidence in making decisions about the care of individual patients, integrating clinical expertise, which is the proficiency and judgment that clinicians acquire through clinical experience and clinical practice, with the best, available external clinical evidence from systematic research. ,
In Gilliam, supra, this Court explained:
Enacted by the legislature in 2009, La. R.S. 23:1203.1 is the product of a combined endeavor by employers, insurers, labor, arid medical providers to establish méaningful guidelines for the treatment of injured workers. La. R.S. 23:1203(A); Church, supra. La. R.S. 23:1203.1 was enacted with the; express intent that, with the establishment'and enforcement of the medical treatment schedule, medical and surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient and timely mariner to injured employees. La. R:S. 23:1-203.1(L).
Medical necessity includes services that are in accordance with the MTG and are clinically appropriate and effective for the patient’s illness, injury or disease. *662 LAC 40:1.2717. To be medically necessary, a service must be consistent with the diagnosis and treatment of a condition or complaint, in accordance with the MTG, not solely for the convenience of lathe patient, family, hospital or physician and furnished in the most appropriate and least intensive type of medical care setting required by the patient’s condition. Id.
The MTG provide, in the pertinent part of LAC 40:1:2019:
C. 3. Special tests are generally well-accepted tests and are performed as part of a skilled assessment of the patients’ capacity to return to work, his/ her strength capacities, and physical work demand classifications and tolerance. The procedures in this subsection are listed in alphabetical order, not by importance.
b. Functional Capacity Evaluation (FCE) is a comprehensive or modified evaluation of the various aspects of function as they relate to the worker’s ability to return to work. Areas such as endurance, lifting (dynamic and static), postural tolerance, specific range of motion, coordination and strength, worker habits, employability as well as psychosocial, cognitive, and sensory perceptual aspects of competitive employment may be evaluated. Components of this evaluation. may include: musculoskeletal screen; cardiovascular profile/aerobic capacity; coordination; lift/carrying analysis; job-specific activity tolerance; maximum voluntary effort; pain assessment/psychological screening; and non-material and material handling activities,
i. When an FCE is being used to determine return to a specific jobsite, the provider is responsible for fully understanding the-job duties. A jobsite evaluation is frequently necessary. FCEs cannot be used in isolation to determine work restrictions. The authorized treating physician must interpret the FCE in light of the individual patient’s presentar tion and medical and personal perceptions. FCEs should .not be used as the sole criteria to diagnose malingering,
ii. Full FCEs are sometimes not necessary. If Partial FCEs are performed, it is recognized that all parts of the FCE that are not performed are considered normal. In many cases, a work tolerance screening will identify the ability to perform the necessary job tasks.
(a). Frequency can be used initially to determine baseline status. Additional evaluations cart be performed to monitor and assess progress and aid in determining the endpoint for treatment.
Emphasis added.
| flTypically, the FCE is a test used to determine whether or how a worker can best return to work given the worker’s present health condition. However, the emphasized paragraph above explaining that FCEs can be used initially “to determine baseline status” and subsequently “to monitor and assess progress aid in determining the endpoint for treatment” was one of the factors that the Medical Director found relevant in deciding that an FCE is susceptible of classification as medical treatment under La. R.S. 23:1203A and the MTG.
We find that a reasonable conclusion, as did the WCJ, who said, “1 can understand how [the FCE] can be used as a tool in medical treatment.” There are numerous methodologies for conducting FCEs.[3] In the appropriate case, an FCE *663 may be classified as medical treatment when it is used as a diagnostic reference for treatment purposes, i.e., in furtherance of assessment of the worker’s “baseline,” as well as the worker’s “progress” and a determination of the “endpoint for treatment.” This is well illustrated by this Court’s opinion in Collins v. Patterson Drilling, 39,668 (La.App. 2d Cir. 5/11/05), 902 So.2d 1264. In that case, the claimant underwent an IME, and the IME doctor, Dr. Habig, recommended that the claimant undergo an FCE “to detérmine thé extent of his limitations.” The FCE was never performed. The OWC later denied the claimant’s demand for TTD benefits, but did so in reliance upon the wrong statute. On appeal, this Court concluded that it could not properly conduct a de novo review of the | inmatter because the claimant had not had the FCE and further evaluation from the IME doctor:
We do not find this matter to be in a posture which would allow us to conduct a de novo review and render a'judgment on the merits of whether Collins is enti-tied to TTD’s or other disability benefits. This is due to the incompleteness of information in the record- regarding Collins’ limitations. Dr. Habig concluded that Collins will have limitation of activity. Dr. Habig recommended performing an FCE to determine the extent of Collins’ limitations. Without the FCE and further evaluation of Collins’ limitations by Dr. Habig, the IME report is incomplete.' The primary issue is whether Collins is physically unable to engage in any employment such that he may be entitled to TTD benefits.' Assessment of Collins’ limitations is essential to the WCJ’s resolution of whether Collins is entitled to disability benefits. As such, we must remand this matter for a new trial on Collins’ entitlement to disability benefits once the FCE and Dr. Habig’s further evaluation is done. A new trial will also allow the WCJ to assess Collins’ claim in accordance with La. R.S. 23:1221(1)(C).
This is a case where the FCE was closely aligned . with medical treatment, even though the primary issue was entitlement to. TTD benefits, because the exam was necessary for the IME doctor’s “further evaluation of [the claimant’s] limitations.”
Nevertheless, an FCE need not always be classified' as' medical treatment, and indeed, many times the FCE will not be so classified.[4] La. R.S. 23:1121 provides, in part:
A. An injured employee shall -submit himself to an examination by a duly qualified medical practitioner provided and paid for-by the employer, as soon after the accident as demanded, and from time to time thereafter as often as may be reasonably necessary and at reasonable hours and places, during the pendency of his claim for compensation or during the receipt by him of payments under this Chapter. The employer or his | ^workers’ compensation carrier shall not require the employee to be examined by more than one duly qualified medical practitioner in any one field or specialty unless prior consent has been obtained from the employee. .
The FCE has commonly been treated as an examination under this article, and when it is used primarily to determine the worker’s ability to return to work and not to determine matters such as “an endpoint for treatment,” the FCE falls squarely within the category of examinations that the employer may require. We reject the claimant’s argument that an FCE cannot *664 be classified as a mere “examination” under La. R.S. 23:1121(A); the classification is governed by the purpose for which the FCE is ordered. '-An FCE -not intended as medical treatment would not require the filing of an OWC Form 1010 by the provider.
Moreover, a physical therapist is a “medical practitioner” within the meaning of this article,[5] see Gautreaux, supra,[6] and barring a showing of unusual circumstances, may perform an FCE. We do not find the claimant’s arguments against the therapist’s methodology in this case persuasive; the WCJ was not manifestly erroneous on the limited evidence in record in concluding that Mr. Arcement can perform this evaluation.
In short, we - conclude that the WCJ correctly ruled that Ms. Rison must undergo the FCE with the employer’s choice of provider.
[^Regarding the review of the medical director’s decision, La. R.S. 23:1203.1 provides, in pertinent part:
K. After the issuance of the decision by the medical director or associate medical director of the office, any party who disagrees with the decision, may then appeal by filing a “Disputed Claim for Compensation”, which is LWC Form 1008. The decision may be overturned when it is shown, by clear and convincing evidence, the decision of the medical director or associate medical director was not in accordance with the provisions of this Section.
We conclude that' the WCJ was correct in holding that the employer failed to show by clear and convincing evidence that the medical director’s decision was not in accordance with La. R.S. 23:1203.1 and the guidelines. Here, the IME doctor specifically recommended that Rison undergo an FCE, but the IME doctor disagreed with Rison’s, doctor about the need for surgery and the likelihood of success of that surgery. Under the particular facts of this case, Rison’s FCE with the provider of her choice[7] was exactly the kind of use of an FCE that does amount to “medical treatment” within the meaning of La. R.S. 23:1203(A). In light of the significant dispute about Rison’s need ‘ for further medical treatment including surgery, the FCE performed by a- provider of her own choosing in conjunction with her informed consent, was clearly in furtherance of the resolution of the dispute about her need for future medical care. Because this request was in the [ 13nature of .medical treatment, it had to be, approved through the OWC Form. 1010/1009 procedure, which •Ms. Rison followed. - :
Thus, the WCJ correctly decided that Ms. Rison was entitled to have a diagnostic FCE performed by the provider of her own choosing at’her employer’s expense, *665 to the extent authorized by law and the MTG.
CONCLUSION
For the above reasons, the judgment of the OWC is affirmed in all respects. Costs of this appeal are assessed 50% to Ms. Rison and 50% to LifeCare/CNA.
AFFIRMED.

. La. R.S. 23:1123.

. La. Adm. Code 40:I:2715(H).

. At the hearing, the claimant’s attorney reported that the therapist said there were "over 300 different protocols for FCEs.”

. See, e.g., Ware v. Allen Par. Sch. Bd., 2002-1011 (La. App. 3d Cir. 5/21/03), 854 So.2d 374, 380, decision clarified on reh'g, 2002-1011 *664 (La. App. 3d Cir. 9/24/03), 2003 WL 22245948.

. We observe that the Third Circuit has stated, in the ordinary civil context, that a physical therapist is not one of the professionals permitted to conduct examinations pursuant to La. C.C.P. art. 1464. Latiolais v. Hudson Ins. Co., 2015-0300 (La. App. 3rd Cir. 4/30/15), 162 So.3d 1283, 1284.

. While we recognize that writ denials have no precedential value, we agree with the reasoning on this point in the published writ disposition,

. To the extent that Gautreaux, supra, concludes that the claimant, does not have a choice of provider, we disagree with the decision; we agree with that court’s observation in Louisiana Clinic v. Patin’s Tire Serv., 98-1973 (La. App. 3d Cir. 5/5/99), 731 So.2d 525, 528, that there is “no authority that allows the employer or insurer to dictate the place and physician to perform diagnostic testing ordered by a treating physician. Rather, the check on the employee’s testing is through La. R.S. 23:1034.2 and 23¡1142(B), which place a monetary limit on the diagnostic testing.”