722 So.2d 358 (1998)
Willie NELSON, Plaintiff-Appellee,
v.
CITY OF GRAMBLING, Defendant-Appellant.
No. 31,303-WCA
Court of Appeal of Louisiana, Second Circuit.
December 9, 1998.
*360 Jimmy D. Long, Jr., Natchitoches, Counsel for Appellant.
Bobby L. Culpepper, Counsel, for Appellee.
Before MARVIN, C.J., and HIGHTOWER and WILLIAMS, JJ.
WILLIAMS, Judge.
In this workers' compensation case, the defendant, the City of Grambling, appeals a judgment awarding the claimant, Willie Nelson, temporary total disability benefits and supplemental earnings benefits. For the following reasons, we affirm.

FACTS
The claimant, Willie Nelson, was employed by the City of Grambling as a garbage collector. His job entailed riding on the back of a garbage truck and loading garbage onto the truck during routine garbage collections.
On September 6, 1994, Nelson injured his lower back while attempting to load a wet rug onto a garbage truck. Nelson was transported to Lincoln General Hospital where he was treated and released. Thereafter, the claimant was referred to Dr. Michael Belue, a family practitioner, for further treatment. Dr. Belue began treating the claimant and recommended that the claimant receive physical therapy. On September 19, 1994, Dr. Belue released the claimant to return to light duty work. Thereafter, on November 4, 1994, Dr. Belue released the claimant to return to full duty work[1]. According to the claimant, he received chiropractic treatment from Dr. Robert Rendina after being released from Dr. Belue.
On January 23, 1995, at the defendant's request,[2] the claimant was examined by Dr. Gordon Mead, an orthopedist, who concluded that the claimant was physically able to return to work. Thereafter, the claimant sought the opinion of another orthopedist, Dr. Baer Rambach. After examining the claimant, Dr. Rambach concluded that the claimant had not reached maximum medical improvement and ordered the claimant to undergo physical therapy. The claimant underwent physical therapy three times a week for six weeks at the North Louisiana Rehabilitation Hospital until June 9, 1995. The claimant was again examined by Dr. Rambach on July 31, 1995. As a result of this examination, Dr. Rambach suggested that the claimant receive a functional capacity evaluation and that the claimant be reconditioned in a work hardening program prior to returning to work.
On September 14, 1995, at the defendant's request, the claimant was examined by Dr. Frank Cline, Jr. After examining the claimant, Dr. Cline concluded that the claimant had reached maximum medical improvement. Dr. Cline noted that he found no objective physical findings to confirm the symptoms described by the claimant, but, that a functional capacity evaluation would help to clarify any questions about the claimant's ability to work or the level at which he could work.
On October 16, 1995, the claimant underwent a functional capacity evaluation which was administered by David Johnson, a physical therapist. As a result of the evaluation, Johnson determined that the claimant was able to perform medium to heavy work, on an occasional basis, 21 to 50 pounds for medium work and 51 to 100 pounds for heavy work. He also determined that the task of lifting above the head and shoulders should be limited.
On July 15, 1996, the claimant saw Dr. Rambach for a follow-up examination. Dr. Rambach opined that the claimant had reached maximum medical improvement and that he had at least a 10% permanent partial physical impairment and loss of physical function of the lumbosacral region of the spine. Dr. Rambach opined that the claimant should be classified in the "medium work" category. He felt that the claimant *361 should not lift more than 50 pounds occasionally and 25 pounds frequently, with occasional rest periods.

Workers' Compensation Judge's Findings
Based on Dr. Rambach's diagnosis of the claimant, the workers' compensation judge found that the claimant was entitled to temporary total disability benefits beginning March 27, 1995 through October 16, 1995, because on July 31, 1995, Dr. Rambach examined the claimant and concluded that he needed a work hardening program.
The workers' compensation judge noted that, although Dr. Cline concluded that the claimant had reached maximum medical improvement, he recommended a functional capacity evaluation. According to the judge, this recommendation was an indication that Dr. Cline was not certain as to the type of work the claimant was capable of performing.
The workers' compensation judge also found that the defendants failed to prove that there was work available to the claimant for the period of October 16, 1995 through December 1995. Therefore, the claimant was awarded supplemental earnings benefits for this period.
The workers' compensation judge also found that because the claimant had failed to fully cooperate with vocational rehabilitation efforts for the period of December 1995 through July 2, 1996, the claimant would receive supplemental earnings benefits at a fifty percent reduction for that period. However, the workers' compensation judge concluded that there were no rehabilitation efforts after July 2, 1996, and awarded the claimant the full amount of supplemental earnings benefits beginning July 2, 1996.
The workers' compensation judge further ordered that vocational rehabilitation efforts be reinstated that would either include the claimant returning to work with the City of Grambling if a position became available in the medium work category or the retraining of the claimant. The claimant was reimbursed for travel expenses incurred during travel for medical treatment.

DISCUSSION
The defendant contends that the workers' compensation judge erred in finding that the claimant proved entitlement to temporary total disability benefits and to supplemental earnings benefits. The defendant also asserts that it met its burden of proof with regard to the reasonable availability of jobs in the claimant's geographical region and within claimant's physical limitations that paid 90% or more of the claimant's average pre-injury wage.
It is well established that the workers' compensation act is remedial in nature. In order to effectuate the humane policies it reflects, the law is to be liberally construed in favor of the injured employee. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La.1993).
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. The issue to be resolved by the appellate court is not whether the workers' compensation judge was right or wrong, but whether the factual conclusion was reasonable. Accordingly, where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Hagan v. LSU Medical Center, 28,669 (La.App.2d Cir.9/27/96), 681 So.2d 971. The question of whether the claimant is entitled to compensation benefits is ultimately a question of fact, and the workers' compensation judge's resolution of that issue may not be disturbed by the appellate court in the absence of manifest error or unless clearly wrong. Hagan v. LSU Medical Center, supra.
An employee is entitled to receive temporary total disability benefits only if he proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment. Knotts v. Snelling Temporaries, 27,773 (La. App.2d Cir.12/6/95), 665 So.2d 657; Johnson v. Temple-Inland, 95-948 (La.App. 3rd Cir. 1/31/96), 670 So.2d 388. To prove a matter *362 by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than is nonexistence. Knotts v. Snelling Temporaries, supra; Johnson v. Temple-Inland, supra.
Upon reaching maximum medical improvement, an injured worker who is able to return to work, even in pain, is no longer eligible for temporary total disability benefits, but instead is relegated to supplemental earnings benefits. Foster v. Liberty Rice Mill, 96-438 (La.App. 3rd Cir. 12/11/96), 690 So.2d 792.
To qualify for supplemental earnings benefits, a plaintiff is required to prove by a preponderance of the evidence that a work related injury resulted in the inability to earn 90% or more of the pre-injury wages. LSA-R.S. 23:1221(3)(a); Banks v. Industrial Roofing & Sheet Metal Works, Inc., supra. The purpose of supplemental earnings benefits is to compensate the injured employee for the wage-earning capacity he has lost as a result of his accident. Banks v. Industrial Roofing & Sheet Metal Works, Inc., supra.
Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for supplemental earning benefits or establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. Banks v. Industrial Roofing & Sheet Metal Works, Inc., supra; Hagan v. LSU Medical Center, supra. Once the employer demonstrates the employee is capable of work, and appropriate work is available, then the claimant must prove by clear and convincing evidence, unaided by a presumption of disability, that he is unable to perform the employment offered.
The defendant argues that, when viewed in its entirety, the evidence adduced at the trial supports the fact that the claimant failed to meet the burden of proof necessary to establish entitlement to either temporary total disability benefits or supplemental earning benefits. The defendant asserts that the claimant failed to meet his burden of proof because he failed to produce witnesses during the trial to corroborate his testimony. The defendant also claims that the claimant lied during his deposition when he was asked whether he had performed jobs after his injury.
In determining whether the claimant was entitled to workers' compensation benefits, the workers' compensation judge considered the claimant's testimony and the various medical evidence from the claimant's examining physicians.
The claimant testified that he was experiencing back pain when he was examined by Dr. Belue. The claimant also testified that, after Dr. Belue released him to light duty work, he contacted the defendant and spoke to Miss Green, someone that he knew as the secretary, and requested light duty work. According to the claimant, Miss Green informed him that there was no light duty work available and, on a later date, she informed him that if he did not return to full duty work, he would lose his job. Claimant testified that Miss Green relayed this information to Dr. Belue, who, as a result, released the claimant to full duty work. According to the claimant, he continued to experience back pain at the time he was released to full duty work.
To counter the allegations made by the claimant, the defendant offered the testimony of Grambling's mayor, John Williams. Williams testified that he was not the mayor at the time of the claimant's injury and that he learned of the claim after taking office. According to Williams, he received correspondence from Janet Papworth, Rehabilitation Consultant for Workmen's Compensation, stating that the claimant was released to return to work. Consequently, he sent the claimant letters dated February 15 and 22, 1995, and offered the claimant part-time employment. On cross examination, Williams testified that the duties of part-time employment were the same as those that the claimant performed prior to his injury, and that light duty work did not exist in the *363 sanitation department. Williams admitted that he had no knowledge of either the actions of the previous administration regarding the claimant or the claimant's work category prior to his injury.
After he was released by Dr. Belue, the claimant was examined by other doctors and underwent physical therapy and medical tests to measure his strength and physical capabilities. However, the results of the examinations and tests were contradictory and inconclusive. Therefore, the issue regarding whether the claimant had recovered from the injury, and if so, the intensity of the work that he could perform remained unresolved.
On January 23, 1995, approximately four months after he was injured, the claimant was examined by Dr. Mead. As a result the examination, Dr. Mead expressed his opinion of the claimant's medical condition as follows:
"I believe that this gentleman most likely sustained a lumbar strain and sprain which should have resolved all this time. I do not know of any further specific treatment that would be beneficial. I feel that he should be able to return to his previous occupation." (Emphasis added)
Contrary to Dr. Mead's diagnosis, Dr. Rambach concluded that the claimant had not reached maximum medical improvement and that the claimant needed to undergo both physical therapy and a functional capacity evaluation. Thereafter, Dr. Cline examined the claimant and concluded that the claimant was at maximum medical improvement, but, he suggested that the claimant undergo a functional capacity evaluation to clarify any questions concerning the claimant's ability to work or the level at which he could work.
David Johnson, the physical therapist who administered the functional capacity evaluation that the claimant underwent on October 16, 1995, concluded that the claimant was able to return to medium to heavy duty work. Subsequently, the claimant was examined by Dr. Rambach, who opined that the claimant was only able to perform medium work duty.
In order to defeat the claim of entitlement to supplemental earnings benefits, the defendant presented a video tape of the claimant allegedly performing odd jobs at a local pawn shop and the claimant's deposition in which the claimant stated that he had not performed any work or odd jobs after his injury.
In response to the defendant's argument, the claimant testified that he and the owner of the pawn shop were long time friends and that the pawn shop was somewhere where he would often "hang out," even before his injury. The claimant testified that occasionally, he ran errands for the owner, but, that he usually watched television and kept the owner company during the time he spent at the pawn shop. Although he admitted that he had received money from the owner of the pawn shop, the claimant testified that the money was not compensation for services that he had performed. According to the claimant, the owner knew that he was not financially stable and sometimes would give the claimant money as a gratuitous gesture.
During the claimant's deposition, the defendant's counsel asked the claimant whether he had worked another job between the time that he became employed with the City of Grambling until the date of his injury. However, the claimant was never questioned concerning jobs that he had worked after his injury. The claimant testified that the rehabilitation therapist gave him a list of potential employers to call to inquire about possible employment. However, the claimant also testified that he was not aware of the location of these employers or of the type of employment offered. According to the claimant, he was never successful in contacting any of these potential employers. The claimant also admitted that there were instances where he was notified of potential employers and other agencies that provided help that he did not pursue. He testified that he took it upon himself to search for employment. He explained that, because he had limited transportation, he was only able to investigate potential jobs at the unemployment office in Ruston, Louisiana.
The record does not reflect that the defendant was successful in proving that the claimant was capable of working or that it provided the claimant with jobs within his or the *364 employer's community or reasonable geographical region and within the claimant's physical limitations.
There was no conclusive evidence presented to support the defendant's contention that, from the time that the claimant was released to return to full duty work until the date that he completed the functional capacity evaluation, the claimant had reached maximum medical improvement and was able to return to work. Based on the evidence presented, we cannot say that the workers' compensation judge's resolution of the issues presented demonstrates manifest error or is clearly wrong.

CONCLUSION
For the foregoing reasons, the decision of the workers' compensation judge is affirmed. Costs of this appeal are assessed to the defendant, the City of Grambling in accordance with the law.
AFFIRMED.
HIGHTOWER, J., dissents with written reasons.
HIGHTOWER, J., dissenting.
The treating physician, less than two months after the accident, released plaintiff for full-duty work. Approximately two and one-half months later, Dr. Meade, an orthopedist, confirmed that no further treatment would be beneficial and that the claimant should be able to return to his previous occupation. In September 1996, another orthopedist, Dr. Cline, concluded:
I see absolutely no reason why this man can't return to regular work at this time. Based upon his functional capacity evaluation indicating that on the dynamic lifts he could lift in the heavy to very heavy range, and the very apparent overstatement and exaggeration of his findings, I can only conclude that this man is not willing to do anything. From the objective standpoint, I think he can return to any type of occupation that he chooses to do.
Two months earlier, another physician (chosen by plaintiff) found the claimant then capable of medium-duty work.
Based upon his own testimony, plaintiff also obviously did not cooperate when the rehabilitation therapist sought to provide him leads for various jobs. Nor did he extend any effort to secure a commercial driver's license, a rehabilitation goal that had been established. Apparently too, his deposition testimony is at variance with the work he is shown performing on the surveillance videos. (The videos, introduced into evidence, have not been included in the appellate record.)
Without question, this record fails to establish plaintiff's entitlement to temporary total disability payments by "clear and convincing evidence." Nor has plaintiff, when the evidence is taken as a whole, proven he is unable to earn 90 percent of his pre-injury wages.
I respectfully dissent, and would dismiss plaintiff's claims against the municipality.
NOTES
[1] The claimant received workers' compensation benefits during the time that he was treated by Dr. Belue.
[2] The defendant's workers' compensation carrier, Risk Management, Inc., was in charge of handling the claimant's claim. Risk Management retained Glenn-Mar Rehabilitation Firm to document and assess the claimant's progress, and ultimately, determine the claimant's ability to return to work.