CARAWAY, J.
hThe employee slipped and fell, injuring her back while performing her work duties at a supermarket. The employer paid temporary total disability benefits for one year but terminated benefits after learning of the employee’s extensive medical history that included a prior back injury. The employer also denied the employee’s medical claim for a discography. The employee filed a disputed claim for reinstatement of benefits and payment for the medical procedure. The workers’ compensation judge (“WCJ”) denied relief after determining that the employee presented insufficient proof of a disability or causation. The employee appeals that decision. Finding no manifest error in the judgment, we affirm.

Facts

On October 29, 2002, Mae Rean Lee reported to her job as a pastry cook at the Piggly Wiggly in Springhill, Louisiana, which is owned by the defendant (hereinafter “Piggly Wiggly”). After completing some tasks, Lee decided to take a break. On her way to the bathroom, Lee slipped on residual floor grease and fell, injuring her lower back, buttocks, shoulder and wrist. A co-worker assisted Lee up from the floor and she continued working for approximately thirty minutes after she fell. When her left hand and wrist began to swell, Lee’s manager sent her to the hospital. Her back pain did not diminish.
Lee initially went to Springhill Medical Center for treatment. She later saw Dr. *1218 Clinton McAlister, an orthopedic specialist, on November 11, 2002. He prescribed physical therapy and anti-inflammatory medication. |<When her pain persisted, Dr. McAlister scheduled an MRI and referred her to Dr. Pierce Nunley for a spinal evaluation. Dr. Nunley first saw Lee on February 10, 2003. He continued the physical therapy but Lee obtained no relief. The MRI showed degenerative changes at L5-S1 with disc herniation. Dr. Nunley recommended a discography. When Piggly Wiggly denied payment, however, Lee instituted a disputed claim for medical treatment in June 2003, including a claim for penalties and attorney fees.
Piggly Wiggly answered, noting Lee’s continued receipt of indemnity and medical benefits. It exercised its choice of physicians to determine the necessity for the discography. Accordingly, Dr. Carl Goodman evaluated Lee to furnish a second opinion. He concluded she was not a candidate for surgery after reviewing two MRI’s, one from before the accident and the other from January 2003. Dr. Goodman compared the two MRI’s to determine that Lee was not manifesting any new injury that could be related to her accident and was thus capable of performing the same work activities as she did before.
In July 2003, Lee was deposed and questioned about her medical history. Based upon allegations that Lee’s deposition testimony and discovery responses directly contradicted her medical and employment records, Piggly Wiggly defended Lee’s claim asserting forfeiture of benefits pursuant to La. R.S. 23:1208. Piggly Wiggly also ceased paying Lee indemnity benefits in October 2003, although it continued to pay for her medical expenses, excluding the discography, until the time of trial.
hAt trial, the parties stipulated to Lee’s average weekly wage of $146.00, the payment of indemnity benefits through October 9, 2003, and Piggly Wiggly’s payment of medical benefits with the exception of the discography. In denying the entirety of Lee’s claims, the WCJ ruled as follows:
The court has concluded that claimant was not a credible witness. It further finds that other witnesses and other evidence have discredited or cast serious doubt upon claimant’s allegations of complete freedom of back pain prior to the alleged work related accident on October 29, 2002. It also finds that she has completely failed to carry her burden of demonstrating by clear and convincing evidence that she has any residual disability from the said alleged accident. She has a long and well documented history of previous back injuries and lower back pain, as well as injuries to other parts of her body. Despite her assertions to the contrary, she has had numerous work related and motor vehicle accidents.
This appeal by Lee followed.

Discussion

An employee is entitled to receive TTD benefits only if she proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment. Nelson v. City of Grambling, 31,303 (La.App. 2d Cir.12/9/98), 722 So.2d 358, writ denied, 99-0073 (La.2/26/99), 738 So.2d 588; Knotts v. Snelling Temporaries, 27,773 (La.App. 2d Cir.12/6/95), 665 So.2d 657; Johnson v. Temple-Inland, 95-948 (La.App. 3rd Cir.1/31/96), 670 So.2d 388, writ denied, 96-0544 (La.4/19/96), 671 So.2d 919. This is the standard of proof which a claimant must satisfy when she files a disputed claim form seeking an award of TTD benefits after the employer or insurer terminates voluntary payments of TTD benefits. Brantley v. Delta 4Ridge Implement, Inc., 41,190 (La.App. 2d Cir.6/28/06), *1219 935 So.2d 308. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than is nonexistence. Id.
Since the 1989 amendment to La. R.S. 23:1221(l)(d), maximum medical improvement alone has not been the standard for the termination or eligibility of TTD benefits. Mitchell v. AT & T, 27,290 (La.App. 2d Cir.8/28/95), 660 So.2d 204, writ denied, 95-2474 (La.12/15/95), 664 So.2d 456. Upon reaching maximum medical improvement, an injured worker who is able to return to work, even in pain, is no longer eligible for TTD benefits, but instead is relegated to supplemental earnings benefits (SEB’s). Nelson v. City of Grambling, supra; Foster v. Liberty Rice Mill, 96-438 (La.App. 3d Cir.12/11/96), 690 So.2d 792.
To qualify for SEB’s, a plaintiff is required to prove by a preponderance of the evidence that a work-related injury resulted in the inability to earn 90% or more of the pre-injury wages. La. R.S. 23:1221(3)(a); Nelson v. City of Grambling, supra; Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551. The purpose of SEB’s is to compensate the injured employee for the wage-earning capacity she has lost as a result of her accident. Nelson v. City of Grambling, supra; Banks v. Industrial Roofing & Sheet Metal Works, Inc., supra.
Under La. R.S. 23:1221(3)(a), an employer may preclude an award of SEB’s by establishing that the employee is physically able to perform a | r,certain job and that the job was offered to the employee, or that the job was available to the employee in his or the employer’s community or reasonable geographic region. Nelson v. City of Grambling, supra; Banks v. Industrial Roofing & Sheet Metal Works, Inc., supra. Once the employer demonstrates the employee is capable of work, and appropriate work is available, then the claimant must prove by clear and convincing evidence, unaided by a presumption of disability, that she is unable to perform the employment offered. Nelson v. City of Grambling, supra; Foster v. Liberty Rice Mill, supra.
In support of her claims at trial, Lee submitted certified copies of her medical records from Springhill Medical Center and Dr. Nunley into evidence. Lee also testified. In opposition, Piggly Wiggly submitted the deposition of Dr. Carl Goodman, Lee’s various medical and employment records and Lee’s responses to interrogatories.
Lee testified that the first time she learned about the herniated disc in her back was when she had a fight stroke which required an MRI and revealed the condition. Her back did not hurt in 2001 before she went to the hospital for the stroke or after she went home. She admitted hurting her back lifting a table while working as a school cook in the 1990’s, but she claimed no other accidents affecting her back.
Lee stated she was physically unable to perform any of her job duties because of her back pain. She cannot work an eight-hour shift and has not had a pain-free day since the accident. She can neither stand for more than 15 minutes nor bend, stoop or even sit for long periods. On a scale of one to | (¡ten, she described her pain as 9.5. Lee testified that Piggly Wiggly offered her no re-employment or rehabilitation. In September 2004, Lee began receiving social security disability benefits in the amount of $579.00 per month because of her stroke.
On cross-examination, Lee conceded that she never told Dr. Nunley about her *1220 herniated disc. Her deposition testimony containing denials of any other slip and fall or automobile accidents, shoulder pain or treatment for her back was used for impeachment. Lee’s medical records reflected an LSU hospital visit in 1979 after she fell at home and injured her back. X-rays taken then revealed a “retro slip at L5-S1,” the same level as her herniated disc. Caddo Parish School Board employment records showed Lee required chiropractic treatment for low back pain in 1994 and missed work during that time. Lee also consulted an attorney for an accident and injury claim in 1998. A shoulder injury for which she filed a workers’ compensation claim and was placed on light duty occurred in March 1999. Finally, a May 10, 2000 accident report from her school board personnel file revealed that Lee had fallen at home and injured her neck and back and was placed on bed rest for three days.
Lee resigned from her school employment for medical reasons relating to her stroke on January 16, 2002, nine months before the Piggly Wiggly accident. She attributed her school employment disability only to her stroke and not the herniated disc, although her physician had related her disability to the herniated disc in Lee’s disability application. Lee denied having any back pain before the Piggly Wiggly accident and could not |7account for her self-reported complaints of low back spasms and use of anti-inflammatory drugs for back pain contained in the LSU medical records from 2001. Lee was also diagnosed with rheumatoid arthritis before this accident.
Lee attempted to explain why she answered “none” in response to defendant’s interrogatory which inquired about “any” prior accidental injuries or disabilities. She testified that she thought the questions related to any “disabling” disabilities and that she had recovered from her previous accidents and injuries.
Lee’s medical records included the two MRI reports. The 2001 MRI showed that “the L5-S1 disc is partially desiccated and demonstrates a small central herniation which exerts compression on the anterior aspect of the thecal sac.” The January 2003 MRI reported “mild degenerative disk disease L5-S1 with, central disc protrusion effacing the thecal sac in the midline to a mild degree.” The medical reports of Dr. Nunley showed that he recommended that Lee undergo a discography to see whether she was a surgical candidate and whether surgery was indicated.
On the other hand, Dr. Goodman’s preliminary evaluation concluded that “it is my opinion that this lady is not a candidate for surgery due to her predominance of the low back over the leg complaints and lack of objective physical findings, both on examination and by Dr. Nunley’s report of MRI.” On April 23, 2004, Dr. Goodman supplemented his report to conclude that no new ongoing injury was caused by the October 29, 2002 accident.
[sIn his deposition, Dr. Goodman noted no change or aggravation of Lee’s preexisting condition prior to the accident. Dr. Goodman interpreted both MRI’s as “about the same” with “identical” L5-S1 small disc herniation. He testified that the degenerative condition existed prior to the accident. Dr. Goodman opined that Lee’s injury on October 29, 2002, was a soft tissue strain to her low back which aggravated the preexisting condition, but would have resolved in three to six months. With respect to the aggravation of the condition due to the accident, Dr. Goodman testified that he would have expected her to return to her baseline condition after conservative treatment. In his opinion, Lee was at maximum medical im *1221 provement within this period and should have been able to perform her job duties after that. Dr. Goodman also testified that he would expect Lee’s symptoms to wax and wane. He also believed she had back pain before the accident. Dr. Goodman noted that Lee claimed no previous back problems and did not disclose the 2001 MRI to him. He concluded that Lee did not need surgery and the discography recommended by Dr. Nunley was not medically necessary.
Both at trial and in deposition, Lee’s testimony was glaringly inconsistent and self-serving, especially regarding her previous medical history. Contrary to her testimony, the medical reports document Lee’s prior incidents of back pain as well as the herniated disc at the same level. Lee suspiciously omitted any mention of her prior back condition to any of her treating physicians. When confronted with the medical documentation of her previous back complaints and workers’ compensation claims, Lee 19conveniently claimed amnesia. Therefore, the issue of credibility, which is reserved for the trial court because of its ability to observe the witness, is also readily apparent to this appellate court. Lee’s lack of credibility in reporting the alleged ongoing condition which rests on her subjective complaints does not allow for a reversal of the WCJ’s ruling.
Lee’s failure to mention her previous diagnosis of disc herniation and back pain to Dr. Nunley undoubtedly affected his ultimate conclusions regarding her condition. Moreover, because Dr. Nunley offered no medical opinion regarding the causation of Lee’s back complaints, Dr. Goodman’s testimony is the only expert opinion on that issue. He concluded from the MRI data that no new ongoing injury was caused by the October 29, 2002 accident and that Lee’s further medical treatment was mainly related to her preexisting degenerative disc disease. With no offering of contrary proof by Lee, the WCJ was clearly justified in finding that she failed to show that her back complaints were caused by the accident. This conclusion not only defeats her claim for reinstatement of any indemnity benefits, but also her claim for discography and penalties and attorney fees for the arbitrary denial of these benefits. For these reasons, the judgment of the WCJ is affirmed at Lee’s costs.
AFFIRMED.