10 So.3d 866 (2009)
Dwayne LEDFORD
v.
NEW ORLEANS SAINTS.
No. 2008-CA-1307.
Court of Appeal of Louisiana, Fourth Circuit.
April 29, 2009.
Rehearing Denied June 3, 2009.
*868 Frank A. Bruno, New Orleans, LA, for Plaintiff/Appellant.
David K. Johnson, Johnson, Stiltner & Rahman, Baton Rouge, LA, for New Orleans Saints and Louisiana Worker's Compensation Corporation.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge DENNIS R. BAGNERIS, SR., Judge EDWIN A. LOMBARD).
EDWIN A. LOMBARD, Judge.
In this Workers' compensation matter, Plaintiff, Dwayne Ledford, appeals the decision of the trial court finding in favor of Defendants, the New Orleans Saints ("the Saints"). For the reasons more fully set forth below, we affirm.

Relevant Facts
On March 14, 2006, Mr. Ledford, a veteran football player, entered into a contract with the Saints. The terms of the contract provided that it was to be a twoyear contract from March 1, 2006 to February 28, 2008, with payment of $210,000.00 for the first year and $260,000.00 for the second year, if the player was member of the active roster.
On April 8, 2006, while in course and scope of his pre-season employment with the Saints, Mr. Ledford fractured his right pinkie finger. As a result, Mr. Ledford had surgery during which a plate and screws were placed in his finger. Subsequently, Mr. Ledford continued to participate in off-season workouts, mini camps and training camp exercises, until he was released from the team for unsatisfactory performance on September 1, 2006, prior to the beginning of the regular football season. Mr. Ledford was never a member of the Saints 2006 active roster.
Almost immediately following his release from the Saints, Mr. Ledford was offered positions with two other football teams with contract offers up to $100,000.00, but he chose to decline the offers without ever trying out for the teams. He later began a career as a football coach with NFL Europe, and earned $2,081.00 per month from March through July 2007. In January 2008, Mr. Ledford began earning *869 $5,000.00 per month with the All American Football League ("AFL").

Trial Court's Findings of Fact
After a trial, the trial found:
(1) Mr. Ledford was injured and released in the pre-season; his earnings for 24.28 weeks totaled $12,808.58, which was the basis of determining his average weekly wage;
(2) Mr. Ledford's average weekly wage is $527.00 per week;
(3) Mr. Ledford's Supplemental Earnings Benefits ("SEB") rate is $351.61 per week;
(4) Mr. Ledford did not carry his burden of proof that he is entitled to Temporary Total Disability or Permanent Partial Disability Benefits;
(5) Mr. Ledford did not carry his burden of proof that he suffered a workrelated accident with injury to his knee in 2006;
(6) Mr. Ledford did suffer a work-related accident with injury to his right fifth finger while within the course and scope of his employment with the New Orleans Saints on April 8, 2006 during the pre-season;
(7) Mr. Ledford did not carry his burden of proof that he earned less than or was not able to earn 90% of his pre-accident wages with an AWW of $527.00 per week;
(8) This claim was reasonably controverted. No penalties and attorney fees are due; and
(9) Each party is assessed its own costs.

Assignments of Error
Mr. Ledford argues that the trial court erred in the following:
(1) by failing to correctly calculate his average weekly wage to reflect the true earning capacity of an NFL football player;
(2) by denying supplemental earnings benefits and all other indemnity benefits and ignoring the medical evidence verifying his disability;
(3) by denying reimbursement of medical expenses for the treatment of his finger, which included removal of the hardware in his finger as well as physical therapy; and
(4) by failing to award attorney's fees and penalties for the employer/carrier's arbitrary refusal to pay any Workers' compensation benefits that are due and for the medical treatment that was clearly related to his injury.

Standard of Review
In Workers' Compensation cases, the appropriate standard of review to be applied by the appellate court to the Office of Workers' Compensation judge's findings of fact is the manifest error-clearly wrong' standard. Dean v. Southmark Construction, 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117. Thus, the trial court's factual finding should be given great weight and should not be overturned absent manifest error. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706.

Law and Discussion

Calculation of Average Weekly Wage
In his first assignment of error, Mr. Ledford argues that the workers' compensation judge erred in basing the calculation of his average weekly wage on his actual earnings of $12,808.58. He argues that the workers' compensation judge should have determined his average weekly wage based on his promised annual salary of $210,000, which would have given him a pre-injury monthly wage of $17,500.
*870 The court in Hughes v. New Orleans Saints & LWCC, 05-712 (La.App. 5th Cir.2/27/06), 924 So.2d 1086, addressed similar circumstances. In Hughes, the Fifth Circuit Court of Appeal found that the workers' compensation judge incorrectly evaluated the claimant's status based on his promised contractual salary of $400,000.00, rather than his actual earnings. Id. at 1092. In so finding, the Fifth Circuit determined that although Hughes' contract promised a salary of $400,000.00 paid in "equal weekly or bi-weekly installments over the course of the applicable regular season period, commencing with the first regular season game played by the Club," it was improper to use that number to calculate benefits because Hughes was "released on September 5, 1999 before [emphasis added] the regular season commenced." Id.
As in Hughes, the record in this case reveals that the Saints released Mr. Ledford from the team on September 1, 2006, prior to the commencement of the regular 2006 season. As such, he was not actually entitled to the wages as set forth in his 2006 NFL contract because he was not, as contemplated in the agreement, a member of the Saints "active roster." According to the record, Mr. Ledford's wages for his 2006 pre-season play totaled $12,808.58. Therefore, the workers' compensation judge was correct in using this number for purposes of determining Mr. Ledford's entitlement to benefits. And since Mr. Ledford's tenure with the Saints consisted of 24.28 weeks (since his contract was signed March 14, 2006 and he was released on September 1, 2006), the trial court correctly calculated his average weekly wage to be $527.41 per week.

Entitlement to Supplemental Earnings Benefits
The purpose of supplemental earnings benefits is to compensate the injured employee for the wage-earning capacity he has lost as a result of his accident. Nelson v. City of Grambling, 31,303 (La.App.2d Cir.12/9/98), 722 So.2d 358. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551. The determination of the correct average weekly wage earned by claimant at the time of his injury affects the computation of whether he is entitled to supplemental earnings benefits. In his second assignment of error, Mr. Ledford argues that the workers' compensation judge applied the incorrect calculation of his average weekly wage to calculate his level of supplemental earnings benefits. Again, Mr. Ledford contends that the workers' compensation judge should have calculated his average weekly wage and determined his entitlement to supplemental earnings benefits based on his promised annual salary of $210,000.00. Under this scenario, since his current earnings are not greater than 90% of his average weekly wage and Mr. Ledford would be entitled to supplemental earnings benefits.
La. R.S. 23:1221 sets out the schedules of compensation for the various categories of injuries within the statute. Since Mr. Ledford is neither permanently totally nor temporarily totally disability categories under La. R.S. 23:1221(1)-(2)., La. R.S. 23:1211(3), the statute that provides for supplemental earnings benefits, applies in this case. La. R.S. 23:1221(3) provides as follows:
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any *871 employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
La. R.S. 23:1221(3) places the initial burden to prove disability on the claimant. To qualify for Supplemental Earnings Benefits, a plaintiff is required to prove by a preponderance of the evidence that a work related injury resulted in the inability to earn 90% or more of the pre-injury wages. LSA-R.S. 23:1221(3)(a); Nelson v. City of Grambling, supra. The analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that Workers' compensation law is to be liberally construed in favor of coverage. Id.
As we previously stated, the trial court correctly calculated Mr. Ledford's average weekly wage using his pre-season salary. Because Mr. Ledford was not a member of the active roster as of the beginning of the season, he was not entitled to the agreed upon earnings stipulated in his contract with the Saints. Thus, when calculating supplemental earnings, in accordance with La. R.S. 23:1221(3)(d)(i), Mr. Ledford would only be entitled to supplemental earnings if he was unable to earn at least 90% of his pre-season salary.
Reviewing the facts related above, we conclude that trial court's finding that Mr. Ledford did not establish by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident was correct. Our review of the evidence reveals that Mr. Ledford's preinjury wages earned from his pre-season participation in Saints' training camps and work-outs was $12,808.58. Thus, he would only be entitled to supplemental earnings if he can prove that he cannot earn 90% of $12,808.58, or $11,527.72. The record reflects that Mr. Ledford was offered positions on two separate teams immediately after his release from the Saints, but he chose to decline the offers without trying out for the teams. Although Mr. Ledford may or may not have been able to return to play professional football, he began a second career as a football coach earning $2,081.00 per month from March through July 2007 with NFL Europe and, as of March 2007, earning $5,000.00 per month with the AFL. Thus, as Mr. Ledford is clearly able to earn 90% or more of his pre-injury earnings, the trial court's finding that Mr. Ledford is not entitled to supplemental earnings benefits is correct.

Reimbursement of Medical Expenses
In his third assignment of error, Mr. Ledford argues that the workers' compensation judge erred in denying reimbursement of medical expenses for the treatment of his finger, including removal of the hardware in his finger, as well as treatment and physical therapy for an alleged knee injury. He argues that the trial court ignored the medical evidence consisting of reports of Mr. Ledford's treating physician and those of the Saints' physician in failing to award damages for these expenses.
With regard to medical treatment, La. R.S. 23:1203(A) provides that the employer shall provide all necessary treatment, including "medical and surgical treatment, or any nonmedical treatment recognized by the laws of this state as legal." An employee establishes a claim for medical benefits by proving by a preponderance of the evidence and to a reasonable *872 certainty, the need for such treatment following his work-related accident. Ware v. Allen Parish Sch. Bd., 02-1011 (La.App. 3 Cir. 5/21/03), 854 So.2d 374. Under La. R.S. 23:1021(1) an accident is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration."
In this case, the medical evidence presented at trial does in fact show that Mr. Ledford injured his right pinkie finger in April 2006 accident while participating in drills with the New Orleans Saints. The medical records from Dr. Claude Williams, the Saints' team physician, indicate that Mr. Ledford received the appropriate medical care for that condition and was having no problem with his hands as of the date he was released from the team on September 1, 2006. Notably, Mr. Ledford admitted in a deposition that he participated in all pre-season workouts, mini-camps, and training camp exercises following the injury to his finger.
On July 10, 2006, before his release by the Saints, Mr. Ledford's finger was examined by an orthopedist of his choice, Dr. Messer. Dr. Messer diagnosed Mr. Ledford with a right pinkie finger fracture due to an April 8, 2006 injury and recommended physical therapy with Dr. Williams in New Orleans to determine whether or not he would be able to play football without restrictions. Mr. Ledford returned to the team for the remainder of the pre-season. After his release, Mr. Ledford again sought medical advice from Dr. Messer and stated that he was having pain in his finger. Dr. Messer noted that Mr. Ledford desired to have the hardware in the finger surgically removed.
According to the Saints' team physician, at the time Mr. Ledford was released from the Saints, his finger fracture had healed. Although it was noted in his records that he may desire to have the hardware removed in the future, Mr. Ledford has provided no medical evidence that it was medically necessary that he do so. Moreover, that there is no evidence that the Saints authorized any of the medical treatment rendered. Therefore, we do not find that the trial court erred in failing to award Mr. Ledford damages for the subsequent medical treatment and surgery he sought for his finger after September 1, 2006.
Further, we do not find that Mr. Ledford has proven that his alleged knee injury was a result of an "accident" suffered while he was with the Saints. Although there was some anecdotal evidence of a second injury to Mr. Ledford's knee, Mr. Ledford admitted in deposition that he did not recall any incident or accident when his knee was injured and did not know what caused his knee problem. Moreover, he testified that he did not tell the Saints' team physician about any knee injury and never received medical treatment for any knee injury prior to his release from the Saints.
Thus, pursuant to the provisions of LSA-R.S. 23:1021(1), Mr. Ledford has failed to demonstrate the requisite "identifiable, precipitous event" or accident injury to link any subsequent knee problems to his employment with the Saints. Therefore, Mr. Ledford's injury for the purposes of workers' compensation is limited to his finger injury and we find no error in the trial court's failure award Mr. Ledford damages to reimburse him for the treatment of his alleged knee injury.

Attorney's Fees and Costs
Mr. Ledford's final assignment of error seeks review of the workers' compensation judge's failure to award penalties *873 and attorneys fees for the Saints' alleged arbitrary and capricious refusal to pay benefits. La. R.S. 23:1201(F) provides for assessment of a penalty and attorney fees where the employer or insurer has refused or failed to pay benefits due. However, the penalty and attorney fees do not apply if the claim is reasonably controverted. La. R.S. 23:1201(F)(2). To determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. Brown v. Texas-LA Cartage, Inc., 98-1063, pp. 7-10 (La.12/1/98); 721 So.2d 885, 889-91. This definition is in accord with that presently used by the lower courts to determine whether penalties and attorney fees are owed. Id.
Reviewing the evidence in the case, it is clear that the claim was reasonably controverted based on the information available to the Saints. Notably, the Saints paid Mr. Ledford his normal weekly wage until he was officially cut from the team on September 1, 2006. At the time of his exit examination with the Saints' physician, Mr. Ledford's fracture was healed. Further, based upon the evidence available to the Saints, immediately after his release from the Saints, Mr. Ledford was offered positions with other professional teams and had accepted positions as a professional coach. Moreover, Mr. Ledford failed to request authorization for medical treatment from the Saints for his finger injury and has failed to show that removal of the hardware in the finger was medically necessary. Accordingly, because Mr. Ledford's claim was reasonably controverted, he is not entitled to penalties and attorneys fees for the Saints' failure to pay benefits.

Conclusion
Based on the foregoing, we find no error in the trial court's findings. Mr. Ledford has not proved his entitlement to supplemental earnings benefits, workers' compensation benefits, medical expenses, and/or penalties and attorneys fees. Accordingly, we affirm that trial court's judgment in its entirety. Costs of this appeal are to be split equally between the parties.
AFFIRMED.
ARMSTRONG, C.J., concurs in the result.
ARMSTRONG, C.J., concurs in the result.
I agree with the majority opinion that the only injury established by the record was to the claimant's "pinkie" finger. As I do not believe that the record supports a finding that the injury was disabling, I concur in the result.