JOAN BERNARD ARMSTRONG, Chief Judge.
 

 | Edward Batiste, plaintiff herein, appeals a judgment of the Office of Workers’ Compensation, District 08. The judgment denied his claim, ruling that he had not proved by a preponderance of the evidence that he suffered a cervical injury due to a work-related accident within the course and scope of his employment with the defendant, Interstate Hotels and Resorts (hereinafter Interstate). For the reasons that follow, we affirm the judgment.
 

 On August 24, 2007, Mr. Batiste filed a Disputed Claim for Compensation claiming that he was injured on October 5, 2006, in the course and scope of his employment with Interstate, when a pipe connected to an overhead door fell and struck him on his left shoulder and neck. Mr. Batiste claimed that no wage benefits have been paid, and that his disability status was to be determined. He sought attorney’s fees, penalties, costs and interest for all claims.
 

 The matter proceeded to trial on June 17, 2008. The parties stipulated that Mr. Batiste was injured on October 5, 2006, while in the course and scope of his employment; that Zurich was Interstate’s workers’ compensation insurance carrier |2at all pertinent times; and that Mr. Batiste earned $12.00 per hour as a full-time Interstate employee, with an average weekly wage of $480. They also stipulated to the admissibility and authenticity of Mr. Batiste’s exhibits 1-A and 2 through 10; and to defense exhibits 1 through 8.
 

 There appears to be no dispute that Interstate operates the Riverwalk Hotel on Convention Center Boulevard, where Mr. Batiste worked as a painter and labor
 
 *966
 
 er. On October 5, 2006, he stood beneath a commercial garage door and was knocked unconscious. When he regained consciousness, a deliveryman was standing over him, and told him that the door had broken and a large metal gear wheel, weighing more than twenty-five pounds and over eight inches in diameter, had fallen from the top of the twelve-foot garage door and hit Mr. Batiste. Mr. Batiste testified at the trial that the object struck him between his neck and his shoulder on his left side. He took the object and went to the front desk and reported the accident to “Chris”, the night foreman or manager, who was the only Interstate representative on duty at the time. Mr. Batiste testified in his deposition that he told Chris that while standing underneath the door, the door broke, and he brought the piece of iron that hit him. He said it hit between his neck and his shoulder. Chris did not fill out any paperwork. When the rest of the staff came in between seven and eight o’clock, Mr. Batiste spoke with Roxann Smith, of Human Resources, who gave him a voucher for a cab to take him to be seen at Concentra Medical Centers for evaluation by Dr. Francisco Silva.
 

 IsThat same day, Ms. Smith and Mr. Batiste completed an Incident Report, indicating that a personal injury occurred on the loading dock when “a roller iron fell on Mr. Batiste [sic] shoulder, (see attached report).” The attached Zurich online claim report noted the description of the accident: “A roll iron fell on Mr. .Batiste [sic] shoulder.” The following Claimant Injury Details were reported: “Injury description: A roll iron fell on Mr. Batiste [sic] shoulder. Injured shoulder is causing disconfort [sic], A roll iron medal fell from a door on the property. Nature of Injury: Fracture. Body part: Shoulders). Initial treatment: EMERGENCY EVALUATION, DIAGNOSTIC TESTING, MEDICAL PROCEDURES. First treatment date: 10/5/2006.” However, Mr. Batiste testified at his deposition that he told Ms. Smith that his left shoulder was hurting and he had a little pain in his neck, but not what he referred to as “really sufficient pain.”
 

 Leo Nelson then took Mr. Batiste to Concentra Medical Centers of Louisiana (Concentra), where he was seen by Dr. Francisco Silva. Dr. Silva’s report of the initial visit noted that Mr. Batiste stated that a roll iron fell on his left shoulder earlier that day. Dr. Silva noted that the injury had occurred about three hours before his examination, and that Mr. Batiste was getting worse, with stiffness, tightness and numbness down his left arm to his hand. He complained of difficulty with arm movements due to pain, which radiated from his left shoulder to his left arm. According to the notes, Mr. Batiste denied neck or chest pain. Gross examination of the cervical spine revealed no swelling, deformity, abnormal curvature, or other abnormalities. His cervical range of motion was normal in all Lplanes; however the doctor noted decreased range of motion of the left shoulder in all planes with pain. The preliminary x-ray readings of Mr. Batiste’s shoulder and left clavicle were negative. Dr. Silva concluded Mr. Batiste had suffered a shoulder contusion and strain, and prescribed Naproxen and Skelaxin and physical therapy three times a week for two weeks, with modified activity. He recommended no lifting of objects over five pounds in weight; no pushing or pulling over fifteen pounds of force; no reaching above the shoulders; and limited use of the left arm.
 

 Quintín Cole, a Concentra physical therapist, noted his assessment that same day of Mr. Batiste’s condition as left shoulder contusion and bursitis. His report notes the following patient statement: “Patient states: ‘A roll iron fell on my left shoul
 
 *967
 
 der.’ ” Mr. Cole noted that cold packs should be applied to the involved area to promote soft tissue relaxation and reduction of symptoms following planned exercises. He noted that he educated Mr. Batiste on his current injury, expectations of skilled physical therapy services, the regular course of his injury’s progression, contraindicated activities, and proper positioning and techniques. Mr. Batiste verbalized clear understanding of the therapist’s instructions. Mr. Cole prescribed scapula retraction exercise with a black theraband, chest wall stretching in a door frame at various shoulder heights, and blue theraband exercise of the involved shoulder in all pain free ranges.
 

 Is At trial, Mr. Batiste denied having told Dr. Silva or physical therapist Cole that the iron fell on his left shoulder. He persisted in this denial on cross-examination, when shown the reports prepared by Dr. Silva and Mr. Cole.
 

 Mr. Cole’s records indicate that he saw Mr. Batiste again on October 6, 2006, and that Mr. Batiste reported pain in his left shoulder. Mr. Cole’s assessment shows that Mr. Batiste tolerated the treatment well, was progressing well with the therapy, and demonstrating compliance. Mr. Cole’s report of Mr. Batiste’s third visit, on October 9, 2006, notes that Mr. Batiste reported increased pain to his left shoulder and left cervical paraspinals with difficulty sleeping. At the fourth and fifth visits, on October 10 and 12, 2006, Mr. Batiste reported decreased pain and demonstrated increased tolerance for therapeutic exercise.
 

 On October 16, 2006, Mr. Batiste visited Dr. Silva, who again noted Mr. Batiste’s statement, “A roll iron fell on my left shoulder.” The cervical examination was negative, and Mr. Batiste had full range of motion without pain. He demonstrated normal neurological, circulatory and motor function, and there was no pain on palpation and no tissue texture change. Mr. Batiste’s neck showed full range of motion, with no palpable bony or muscular tenderness. The neck examination was negative for spurling and axial load, and the neurological examination was also normal. The left shoulder showed normal range of motion in all planes, and no tenderness on palpation. Dr. Silva noted normal sensory function for Mr. Batiste’s upper extremities. Dr. Silva released Mr. Batiste from care, and advised him to return if his symptoms recurred, worsened, new | fisymptoms developed, pain increased or if he noted any signs of infection. He instructed Mr. Batiste to return to the clinic as needed, and discussed his medications and home exercise program. At trial, Mr. Batiste disagreed with the conclusion contained in Dr. Silva’s report noting that he was then free from pain.
 

 Mr. Batiste testified that following his treatment at Concentra, he returned to work full-time and full-duty. He testified that in November of 2006 he began to have problems he identified as a numbness or tingling in his right arm and in the fingers of his right hand. At trial, Mr. Batiste testified that he told Roxann Smith that he was going to see his family doctor, Dr. Jerry Carl Poche. However, he testified at his deposition that he had not told anyone at his place of employment that he was going to see Dr. Poche. He admitted at trial that he did not ask anyone at work, including Ms. Smith, to pay for his office visit to Dr. Poche, and used his own health insurance. He also admitted on cross-examination at trial that he did not tell Ms. Smith that he wanted to continue seeing Dr. Poche, and that Dr. Poche was a doctor of his own choice, not referred by his employer.
 

 At the end of March, 2007, over five months after the workplace accident, Mr.
 
 *968
 
 Batiste saw Dr. Poche, complaining of right wrist numbness. The doctor gave him a wrist splint. In June of 2007, Mr. Batiste again saw Dr. Poche, complaining of pain and weakness in the right hand and arm. He reported to Dr. Poche that the mechanical door had fallen on his left shoulder. At no time did he complain to Dr. Poche of pain in his right shoulder. Portions of Dr. Poche’s supporting medical records were admitted into evidence.
 

 |7Mr. Batiste stopped seeing Dr. Poche when Interstate referred him to Dr. Eric George, a hand specialist. Mr. Batiste denied on cross-examination that when he saw Dr. George in April of 2007, he told the doctor that the door had fallen on his left shoulder. When presented with the doctor’s note that “Mr. Batiste is a 49-year-old right-handed painter, who on October 6th, was standing under a garage door which had been broken. And it came down on to his left shoulder”, Mr. Batiste admitted that he had given Dr. George that information. After having read Dr. Poche’s reports, Dr. George gave Mr. Batiste a shot that would help him if he had carpal tunnel syndrome. The shot did not help, whereupon Dr. George scheduled an MRI. Dr. George reviewed the results of the MRI and told Mr. Batiste that he had a serious problem, and he should go back to Human Resources. Interstate then referred him to Dr. Anthony Ioppolo, a doctor of the employer’s choice.
 

 Mr. Batiste admitted that on June 6, 2007 and on June 18, 2007, Dr. George gave him full duty work releases. Following a full work-up on June 18, 2007, Dr. George concluded that Mr. Batiste had degenerative disc and joint disease of the cervical spine, noting that the MRI showed spinal stenosis and joint space narrowing at C3-C4, C4-C5 and C5-C6, and his hand had achieved maximum recovery. He suggested that Mr. Batiste consult a neurosurgeon to address the cervical spine issues revealed by the MRI.
 

 Mr. Batiste admitted at trial that he then chose to see Dr. John Logan, an orthopedist of his own choice, not referred by his employer. Dr. Logan noted that Isthere was a problem at C3-4 including cord change, and, on August 23, 2007, sought Zurich’s authorization to perform an anterior fusion and a posterior lamina-plasty. Believing that the cervical problems were degenerative in nature, and not caused by the accident, Zurich denied authorization.
 

 On August 30, 2007, Dr. Ioppolo examined Mr. Batiste. He originally having noted that, from the history given to him by Mr. Batiste, it appeared that the latter’s pre-existing stenosis of the cervical spine was made symptomatic by the accident. However, at his deposition, and having reviewed the entire medical record, Dr. Ioppolo noted that if the right arm radicu-lopathy had not appeared until March of 2007, when Mr. Batiste elected to see his family doctor, then the symptoms were not caused by the October, 2006, workplace accident.
 

 Mr. Batiste then saw neurosurgeon Dr. Bradley Bartholomew, a doctor of his own choice, not referred by his employer. Dr. Bartholomew found three cervical disc her-niations and pre-existing stenosis, and related Mr. Batiste’s symptoms to the workplace accident.
 

 Mr. Batiste testified at his December 20, 2007 deposition that the pain in his right shoulder began approximately three months earlier, approximately in late September of 2007. He also testified that the pain between his right shoulder and neck did not begin until November of 2007, and confirmed that deposition testimony at trial. On re-direct examination, he testified that the problems on the right side of his body began three weeks after the accident,
 
 *969
 
 or in late October or |flearly November of 2006, approximately a year before the dates mentioned in his deposition and previous trial testimony.
 

 Mr. Batiste’s wife, Sandra Batiste, a licensed practical nurse, testified at trial that in the second week of November
 
 [1]
 
 , while she and her husband were preparing for Thanksgiving dinner, she noticed he dropped a small roasting pan. When she asked her husband if he were having a problem, he told her that he was having problems with his right hand.
 

 Mr. Batiste testified that June 2, 2007 was the last day he worked for Interstate.
 

 Mr. Batiste claims the trial court erred in finding that he did not prove his cervical disability was caused by the workplace accident, and in finding that he was not entitled to surgery to correct that claimed disability. Generally, rulings of the Office of Workers’ Compensation are reviewed under the manifest error rule, and may not be set aside unless clearly wrong in light of the record when considered in its entirety.
 
 Ledford v. New Orleans Saints,
 
 08-1307, p. 3 (La.App. 4 Cir. 4/29/09), 10 So.3d 866, 869. When the fact finder’s conclusion is based upon its reasonable evaluation of the credibility of the witnesses, or its reasonable choice between two opposing versions of the facts, that conclusion cannot be manifestly erroneous.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844-45 (La.1989).
 

 Mr. Batiste also contends that the trial court committed legal error when it did not apply the rebuttable presumption that an accident is the cause of a disability 110when the claimant was in good health prior to the accident, but, commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows a reasonable possibility of causal connection between the accident and the disabling condition.
 
 Lucas v. Ins. Co. of North America,
 
 342 So.2d 591, 596 (La.1977). Where the trial court’s decision is based on an erroneous application of law, the reviewing court reviews that decision
 
 de novo.
 

 In light of the credible evidence that Mr. Batiste denied cervical or neck pain during the two weeks he was treated immediately following the accident, and his inconsistent testimony, outlined above, concerning the onset of his cervical symptoms, it is clear that he did not prove entitlement to the presumption of causal connection between the accident and his cervical problems. Therefore, we find no legal error in the trial court’s decision not to apply the presumption.
 

 Absent the applicability of the presumption, we review the trial court’s finding that Mr. Batiste did not prove a causal connection between the workplace accident and his cervical complaints under the manifest error standard. Mr. Batiste complained initially of left shoulder pain, and the physicians’ and therapists’ notes indicate that he did not complain to his physician or therapist of right arm pain for five months, and of neck pain for nine months. He did not complain of cervical symptoms until after he had been released by both Dr. Silva and the therapist. Dr. Ioppolo and Dr. Bartholomew opined that had Mr. Batiste suffered a herniated disc at the time of a workplace accident in which he had been struck in the neck, they jnwould expect his symptoms would have become evident immediately. Dr. Ioppolo noted that cases of multiple herniations, such as
 
 *970
 
 Mr. Batiste’s herniations at three levels, with no immediate neck complaint were unlikely to have been caused by the accident. He related such herniations to degenerative processes that become symptomatic slowly without any particular type of trauma.
 

 Given the totality of the record, we cannot find that the trier of fact was unreasonable in having accepted Dr. Ioppolo’s testimony that the cervical symptoms were not caused by or related to the workplace accident. Therefore, Mr. Batiste is not entitled to curative surgery in this compensation claim.
 

 112M1*. Batiste claims the trial court erred in finding he was not entitled to supplemental earnings benefits (SEB) and temporary total disability benefits (TTDB) as a result of his workplace injury, and in finding that Interstate and Zurich reasonably controverted his claim and were not arbitrary and capricious in their denial of that claim. In light of our affirmance of the trial court’s finding that Mr. Batiste’s cervical disability was not related to his workplace accident, these assignments of error are moot. In order to recover SEB or TTDB, Mr. Batiste must prove by a preponderance of the evidence that his work-related injury rendered him unable to earn ninety percent of his pre-injury wages. The evidence shows that he was released to full duty prior to the onset of the unrelated cervical symptoms. Therefore, he is entitled neither to SEB nor to TTDB as a result of the workplace injury. Likewise, in light of our affirmance, Mr. Batiste is not entitled to penalties or attorneys’ fees in connection with the denial of his cervical claim.
 

 Mr. Batiste claims the trial court erred in failing to award his costs, including the cost of Dr. Bartholomew’s deposition. He recognizes in his brief that these costs are recoverable only in the event that this Court would reverse the trial court’s judgment in favor of his employer and the employer’s insurer. Because we affirm the trial court’s judgment, Mr. Batiste is not entitled to recover Dr. Bartholomew’s fee or cost for the transcription of his deposition testimony.
 

 Mr. Batiste claims that the trial court erred in failing to order reimbursement of the co-pay expenses connected to Dr. Poche’s treatment. We note that these expenses were connected to the claim of cervical injury. Since Mr. Batiste’s cervical symptoms were not related to the workplace injury, the expenses incurred in their diagnosis and treatment are not compensable pursuant to La. R.S. 23:1203.
 

 For the foregoing reasons, having considered the record on appeal in its entirety, we find that the trial court did not commit legal error in failing to apply a presumption that Mr. Batiste’s cervical symptoms were caused by the workplace accident, and that its factual conclusions were not manifestly erroneous or clearly wrong. Therefore, we affirm the judgment.
 

 AFFIRMED.
 

 [1]
 

 . It does not appear from the record that Mrs. Batiste identified the year in which this event occurred; however, both the appellant and the appellees identify the year as 2006.